1   Mindy S. Rodney. Esq. (*Pro Hac Vice*)
2   Rodney & Bernstein, P.A.
3   1925 Brickell Avenue, Suite D-207
4   Miami, FL 33129
5   Tel: (305) 643-9600
6   Fax: (305) 856-8056
7   Email: mindyrodney@mindylaw.com
8   Florida State Bar No. 285102
9
10  Attorney for True Capital Management, LLC and Tamara Jaric, Plaintiffs
11
12  Wade J. Chernick, Esq.
13  16601 Ventura Blvd., Suite 400
14  Encino, CA 91436
15  Tel: (818) 907-9505
16  Fax: (818) 907-5817
17  Email: wade@chernickimmigration.com
18  California State Bar No. 123018
19
20  Attorney for True Capital Management, LLC and Tamara Jaric, Plaintiffs

21
22
23          **IN THE UNITED STATES DISTRICT COURT**
24
25          **NORTHERN DISTRICT OF CALIFORNIA**
26
27          **SAN FRANCISCO DIVISION**
28

FILED

JAN 18 2013

RICHARD W. WIEKING
CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

**JSC**

29
30  TRUE CAPITAL MANAGEMENT, LLC     )   Case No. 13   0261
31  and Tamara Jaric,                )
32                                   )   COMPLAINT FOR
33          Plaintiffs,              )   DECLARATORY JUDGMENT
34                                   )
35          v.                       )   Immigration Case
36                                   )   Administrative Procedure Act Case
37  UNITED STATES DEPARTMENT OF      )
38  HOMELAND SECURITY and United     )   COMPLAINT SEEKING
39  States Citizenship and Immigration )  DECLARATION THAT
40  Services,                        )   DEFENDANTS DENIED
41                                   )   H-1B VISA PETITION IN
42          Defendants               )   VIOLATION OF LAW
43  ───────────────────────────────────
44
45
46

1        Plaintiffs, True Capital Management, LLC and Tamara Jaric, hereby aver:

2                                        **JURISDICTION**

3        1. Plaintiffs, having been aggrieved by an administrative decision of the

4    Defendants, seek judicial relief in this Court. This is an action for declaratory relief,

5    jurisdiction being conferred pursuant to 28 U.S.C. §2201(a) (Declaratory Judgment Act),

6    and more specifically, 28 U.S.C. §1331 (Federal Question), 5 U.S.C. §701 (Definitions),

7    5 U.S.C. §702 (Right of Review) and 5 U.S.C. §706(2) (Scope of Review).

8        2. This Court has jurisdiction pursuant to the following statutes:

9            a.  28 U.S.C. §2201(a), which grants district courts the authority to declare

10               the rights of any interested party seeking a declaratory judgment;

11           b.  28 U.S.C. §1331, which gives district courts original jurisdiction over civil

12               actions arising under the Constitution, laws or treaties of the United States;

13           c.  5 U.S.C. §701, which defines an "agency" as an authority of the

14               Government of the United States;

15           d.  5 U.S.C. §702, which creates a cause of action for judicial review against

16               an agency of the United States for a party suffering legal wrong because of

17               agency action; and

18           e.  5 U.S.C. §706(2), which directs reviewing courts to hold unlawful and set

19               aside agency action, findings and conclusions found to be arbitrary,

20               capricious, an abuse of discretion, unsupported by substantial evidence or

21               otherwise not in accordance with law.

22       3. Although 8 C.F.R. §214.2(H)(10)(iii)(B)(12)(i) provides that a denial of an H-1B

23   petition *may* be appealed to the Administrative Appeals Office under 8 C.F.R. part 103,

Complaint for Declaratory Judgment                                    2 of 17

1    neither the Immigration and Nationality Act (8 U.S.C.) nor the governing regulations

2    mandate that such an appeal is a prerequisite for judicial review, or that such an appeal

3    stays enforcement of the denial. Accordingly, taking such an administrative appeal is not

4    a prerequisite for establishing jurisdiction for U.S. District Court review under 28 U.S.C.

5    §1331 and 5 U.S.C. §702 because the denial at issue here is final for purposes of the

6    Administrative Procedure Act. *Darby v. Cisneros*, 113 S.Ct. 2539, 2542-45, 125 L.Ed 2d

7    113, 61 U.S.L.W. 4679 (1993).

8                          **INTRADISTRICT ASSIGNMENT**

9            4. Venue is appropriate in the Northern District of California, San Francisco

10   Division under 28 U.S.C. §1391(e)(1)(C), which confers jurisdiction over an action

11   against an agency of the United States in any judicial district in which the plaintiff

12   resides, if no real property is involved in the action. This is an action for Declaratory

13   Judgment and plaintiff True Capital Management, LLC is located in San Francisco, San

14   Francisco County, California.

15                                **PARTIES**

16           5. Plaintiff True Capital Management, LLC ("True Capital") is a wealth

17   management company specializing in financial services for professional athletes,

18   entertainers and high net worth individuals. True Capital seeks to temporarily employ the

19   professional services of co-plaintiff Tamara Jaric, a citizen and national of Serbia who

20   possesses a baccalaureate degree in Business Administration from Berkeley College in

21   New York, New York.

22           6. The United States Department of Homeland Security, through its agency

23   known as the United States Citizenship and Immigration Services ("USCIS"), is an

1    administrative agency of the United States government responsible for, *inter alia*,

2    adjudicating applications for nonimmigrant visas filed by employers on behalf of foreign

3    workers seeking temporary employment in the United States.

4    **STATEMENT OF THE CASE**

5    7. On April 9, 2012, True Capital timely filed an I-129H petition with USCIS to

6    temporarily employ the professional services of Ms. Tamara Jaric as an H-1B "specialty

7    occupation" worker (Business Marketing Specialist) pursuant to 8 U.S.C. §1101

8    (a)(15)(H)(i)(b) and 8 C.F.R. §214.2(f)(5)(vi)(A), with a requested H-1B start date of

9    October 1, 2012.

10    8. Documentation submitted in support of the H-1B change of status petition

11    included: attorney cover letter; Form G-28 (Notice of Entry of Appearance as Attorney or

12    Representative); Form I-129H (Petition for Nonimmigrant Worker); letter from True

13    Capital dated March 22, 2012; certified Form ETA 9035 (Labor Condition Application

14    for H-1B Nonimmigrants); copy of Ms. Jaric's Bachelor's Degree in Business

15    Administration from Berkeley College in New York, NY; all required filing fees; Forms

16    I-20 A-B (Certificate of Eligibility for Nonimmigrant (F-1) Student Status); copy of

17    USCIS' "Questions & Answers" webpage outlining the regulations governing change of

18    status from F-1 to H-1B and "Cap-Gap" eligibility; a copy of Ms. Jaric's previously

19    issued Optional Practical Training Employment Authorization Card (valid from 2/18/11-

20    2/17/12); Ms. Jaric's I-94 Arrival/Departure record reflecting her initial lawful admission

21    to the U.S. under F-1 student status; and a company brochure detailing True Capital's

22    history, client services and employee profiles. The above-listed documents submitted in

23    support of the H-1B petition are attached hereto as "Exhibit A."

1    9. On April 9, 2012, defendant USCIS issued a receipt notice (Form I-797C)

2  confirming that the H-1B petition and required fees were timely received. A copy of this

3  receipt notice is attached hereto as "Exhibit B."

4    10. On July 23, 2012 defendant USCIS issued, and plaintiffs thereafter received, a

5  "Request for Evidence" asking for additional information regarding the proffered position

6  and the nature of the petitioner's business, in order to render a final decision.

7  Specifically, the additional evidence requested by USCIS included: a more detailed

8  description of the proffered position, specific job duties, percentages of time to be spent

9  on each duty, level of responsibility, organizational charts, hours per week and an

10  explanation of why a baccalaureate or higher degree was required. Regarding this degree

11  requirement, USCIS requested documentation showing the position met at least one of

12  the following four regulatory criteria established by 8 C.F.R. §214.2(h)(4)(iii), only one

13  of which must be met to qualify a position as a "specialty occupation":

14    1. A baccalaureate or higher degree or its equivalent is normally the minimum

15    requirement for entry into the particular position ("Criterion #1"); OR

16    2. The degree requirement is common to the industry in parallel positions among

17    similar organizations ("Criterion #2a") or, in the alternative, that the petitioner's

18    particular position is so complex or unique that it can be performed only by an

19    individual with a degree ("Criterion #2b"); OR

20    3. The employer normally requires a degree or its equivalent for the position

21    ("Criterion #3"); OR

22    4. The nature of the specific duties of the position are [*sic*] so specialized and

23    complex that the knowledge required to perform the duties is usually associated

1       with the attainment of a baccalaureate or higher degree ("Criterion #4").

2    A copy of this Request for Evidence is attached hereto as "Exhibit C."

3       11. On 10/11/12, in response to USCIS' request, plaintiffs' counsel submitted a

4    letter dated October 10, 2012 arguing that, per 8 C.F.R. §214.2(h)(4)(iii), this petition

5    satisfied not only one but all four of the above-listed regulatory criteria for qualification

6    as a "specialty occupation." Along with this letter was also submitted: a detailed rebuttal

7    letter from True Capital dated September 7, 2012, outlining the specific duties and

8    percentages of time to be spent fulfilling each of the responsibilities of the proffered

9    position; a detailed overview of the petitioner's services; biographical and educational

10   information for eight of the petitioner's nine employees, showing that all eight had

11   attained a Bachelor's degree or higher, with seven of the eight degrees in Finance,

12   Economics or Business Administration; seventeen job postings for parallel positions in

13   similarly situated organizations, all of which require at least a Bachelor's degree, with

14   twelve requiring (and the other five preferring) a Bachelor's degree in Business, Finance,

15   Marketing or a closely related field; and an organizational chart illustrating the hierarchy

16   of the petitioner's company, specifying under whose supervision the beneficiary would

17   work. These documents, submitted in response to defendants' RFE, are attached hereto as

18   "Exhibit D."

19      12. Plaintiffs' 10/11/12 response to USCIS' Request for Evidence also included

20   an expert opinion letter, dated September 13, 2012, written by Professor Maxwell K. Hsu,

21   DBA. Dr. Hsu is a tenured professor of Marketing who holds a Bachelor of Business

22   Administration, a Master of Business Administration and a Doctor of Business

23   Administration. He has published numerous journal articles for business and marketing

1    professional journals, serves as a reviewer for professional journals in the fields of

2    marketing and technology, has received numerous awards for his work in the field of

3    Marketing and has over thirteen years of university-level experience teaching business

4    and marketing courses. After carefully evaluating True Capital's job requirements and

5    need for a professional Business Marketing Specialist, Dr. Hsu stated that, in his

6    professional opinion, True Capital's proffered position qualifies as a "specialty

7    occupation" requiring at least the attainment of a Bachelor's Degree in Marketing,

8    Business Administration, Finance or a closely related field of study. Dr. Hsu further

9    explained that: the knowledge required to perform the duties of the proffered position is

10   usually associated with the attainment of a Bachelor's degree in Marketing, Business

11   Administration, Finance or a closely related field; the coursework required to obtain such

12   a degree directly corresponds to and prepares the student for the specific responsibilities

13   of the position; this degree requirement is common to the industry in parallel positions

14   among similar organizations; and the specific responsibilities associated with the position

15   are so specialized and complex that the knowledge required to perform them is usually

16   associated with the attainment of such a degree. A copy of Dr. Hsu's expert opinion and

17   *curriculum vitae*, as submitted to USCIS, are attached hereto as "Exhibit E."

18          13. On 10/26/12, USCIS issued a Notice of Decision ("the Decision") denying

19   plaintiffs' H-1B visa petition and request for change of status by concluding that True

20   Capital had failed to satisfy any of the four criteria to qualify as a "specialty occupation,"

21   only one of which must be met, per 8 C.F.R. §214.2(h)(4)(iii). Regarding Criterion #1,

22   USCIS initially conceded that an analysis of the proposed job duties revealed that the

23   position described by the petitioner reflected the job duties of a Market Research Analyst.

1    The Service then went on to state that Market Research Analysts typically need a

2    bachelor's degree in Market Research or a related field like Statistics, Math, Computer

3    Science, Business Administration, Communications, or any one of a number of social-

4    science related areas.  Thus, it was concluded that because the position of Market

5    Research Analyst was not an occupation that required a baccalaureate level of education

6    in a **"specific specialty,"** the petitioner was unable to satisfy Criterion #1.  Regarding

7    Criterion #2, USCIS set forth in its Decision that although the petitioner submitted 17 job

8    announcements, none of the listings demonstrated that a degree requirement was

9    **"common to the industry"** in parallel positions among similar organizations.  Moreover,

10   under this criterion, the conclusions that had been drawn by Dr. Hsu were rejected by

11   USCIS on the basis that he did not demonstrate that he was associated with the

12   petitioner's industry, nor did he establish that a bachelor's degree **"in a specific**

13   **specialty"** was required to perform the job duties of the proffered position.  Furthermore,

14   under this same criterion, USCIS contended that the petitioner had not submitted

15   sufficient documentation to show that the position involved duties seen as so unique or

16   complex that only an individual with a degree in a specific specialty could perform them.

17   In rejecting the petitioner's assertions under Criterion #3, USCIS alleged that even though

18   True Capital claimed to have hired only individuals with a bachelor's degree or higher

19   **"in computer science,"** the position still did not require a bachelor's degree in a specific

20   specialty.  Lastly, under Criterion #4, USCIS rejected the petitioner's claim that the

21   nature of the specific duties is so specialized and complex that knowledge required to

22   perform the duties is usually associated with the attainment of a bachelor's degree by

23   holding that the evidence failed to demonstrate that the duties of the proffered position

1    were **"more"** specialized and complex than those normally performed by Market

2    Research Analysts. Thus, it was further concluded that there was insufficient

3    documentation on record to establish that the duties to be performed were so specialized

4    and complex that the knowledge required to perform them would be associated with the

5    attainment of a baccalaureate degree in **"a specific specialty."** A copy of the Decision is

6    attached hereto as "Exhibit F." The Decision fails to take into consideration dispositive

7    facts as well as legal precedents, a failure that undermines the basis of its decision.

8        14. Regarding Criterion #1 – "a baccalaureate or higher degree or its equivalent is

9    normally the minimum requirement for entry into the particular position" – USCIS'

10    determination appears to be a copying and pasting of the typical duties and requirements

11    of a Market Research Analyst, taken from the U.S. Department of Labor's Occupational

12    Outlook Handbook ("OOH") (a purely advisory and non-binding governmental source of

13    information about employment in the U.S.). The Notice does not contain even a single

14    sentence addressing the sufficiency of the evidence the petitioner submitted on this point.

15    Instead, the Decision concludes that a baccalaureate level of education in a specific

16    specialty cannot be a normal minimum for entry into the occupation simply because,

17    according to the OOH, although market research analysts "typically need a bachelor's

18    degree in market research or a related field…[m]any have degrees in fields such as

19    statistics, math, or computer science." By failing to address any of the evidence submitted

20    by the petitioner to show that the degree requirement is normally the minimum

21    requirement for this position, USCIS has violated 8 CFR §214.2(h)(9)(i), which mandates

22    consideration of all evidence submitted. Furthermore, as USCIS failed to consider any of

23    the petitioner's evidence on this point, its determination appears to have been based on

1    the job title alone. This constitutes a violation of USCIS' own proclamation – as written

2    in the very same Decision – that, when determining whether a particular job qualifies as a

3    specialty occupation, "USCIS does not use a title, by itself…Each position must be

4    evaluated based upon the nature and complexity of the actual job duties to be performed

5    with that specific employer" (Exhibit F). Furthermore, Chapter 31.3(g)(1) (entitled

6    "Deciding If the Proposed Employment Is a Specialty Occupation") of USCIS'

7    Adjudicator's Field Manual – the agency's official handbook of policy and procedure –

8    clearly states that, although "[t]here are numerous references available (such as the

9    [OOH])…it is important to note that…job titles themselves are often meaningless…It is

10    important not to be so influenced by a single factor, such as the job title or salary, that

11    other indicators are overlooked." Nowhere does law or regulation limit the specific field

12    of study to only one major to be considered a "specific specialty." This particular position

13    required a degree in Business Administration or a closely related field. USCIS'

14    unsubstantiated denial of the petitioner's Criterion #1 claim is an abuse of discretion

15    under the governing regulations, a violation of USCIS' own stated policy, and

16    contravenes a recent District Court decision with substantially similar facts, *Residential*

17    *Finance Corporation v. USCIS*, Case No. 2:12-CV-00008, 2012 U.S. Dist. LEXIS 32220

18    (S.D. Ohio, Mar. 12, 2012).

19          15. Regarding Criterion #2a – "the degree requirement is common to the industry

20    in parallel positions among similar organizations" – the Decision claims that "none of the

21    [seventeen] listings is sufficient evidence of a degree requirement being common to the

22    industry in parallel positions among similar organizations." This conclusion is unfounded

23    as the majority of the submitted job postings were for similar positions, specifically in

Complaint for Declaratory Judgment                        

1    other wealth/asset management firms, and all of the submitted job postings required

2    baccalaureate or higher degrees. The Decision erroneously states that "the majority of the

3    announcements do not specify a required educational background." In fact, of the

4    seventeen submitted job listings, twelve required and five preferred a Bachelor's degree

5    in the specific areas of Business, Marketing, Finance or a related field as a minimum

6    qualification.

7         16. The Decision erroneously states that the expert opinion letter by Dr. Hsu

8    "does not specify that a baccalaureate degree in a specific specialty is required." This is

9    contrary to Dr. Hsu's clearly stated conclusion that "a minimum of a Bachelor's Degree

10   in Marketing, Business Administration, Finance, or a related area, or the equivalent

11   provides the student with the core competencies and skills needed for a Business

12   Marketing Specialist position with the responsibilities listed [by True Capital]" (Exhibit

13   E). USCIS appears to have either misread or completely ignored this evidence. In the

14   Decision, USCIS also claims that the record does not include sufficient evidence to show

15   that Dr. Hsu is associated with True Capital's industry. As demonstrated by the

16   *curriculum vitae* attached to his expert opinion (Exhibit E) and submitted to USCIS, Dr.

17   Hsu is a tenured professor of Marketing who holds a Bachelor of Business

18   Administration, a Master of Business Administration and a Doctor of Business

19   Administration. He has published numerous journal articles for business and marketing

20   professional journals, serves as a reviewer for professional journals in the fields of

21   marketing and technology, has received numerous awards for his work in the field of

22   Marketing and has over thirteen years of university-level experience teaching business

23   and marketing courses.

Complaint for Declaratory Judgment                                          11 of 17

1         17. Regarding Criterion #2b – "the petitioner's particular position is so complex

2   or unique that it can be performed only by an individual with a degree" – the Decision

3   simply states that "the petitioner has not submitted sufficient documentation" to satisfy

4   this criterion. No discussion or analysis is provided. USCIS failed to cite any evidence in

5   support of this conclusion, in complete disregard for the detailed letters from the

6   petitioner, petitioner's attorneys, and the expert. The Decision contains nothing

7   addressing the sufficiency of any of the evidence submitted.

8         18. Regarding Criterion #3 – "the employer normally requires a degree or its

9   equivalent for the position" – True Capital provided USCIS with degree information for

10   eight of its current nine employees, showing that eight of them hold Bachelor degrees or

11   higher, with seven of the eight holding degrees in the specific fields of Business

12   Administration, Economics or Finance (Exhibit D). In the Decision, USCIS rejected this

13   evidence as insufficient because, "although the petitioner claims to have hired only

14   individuals with a bachelor's degree or higher in computer science, the position,

15   nevertheless, does not meet the statutory definition of specialty occupation" (emphasis

16   added). Nowhere in the administrative record, however, has the petitioner claimed to hire

17   any employees with degrees in computer science. Furthermore, the Decision appears to

18   justify its dismissal of the petitioner's Criterion #3 evidence by citing to *Defensor v.*

19   *Meissner*, 201 F.3d 384, 387 (5th Cir. 2000), a case with completely different facts whose

20   holding is inapposite to the case at hand. While USCIS appears to acknowledge that True

21   Capital provided reliable evidence of its practice of hiring only individuals with a

22   baccalaureate or higher degree, the extent to which USCIS mischaracterizes this evidence

23   and misapplies precedent is arbitrary and capricious, constituting an abuse of discretion

Complaint for Declaratory Judgment                                       12 of 17

1    unsupported by substantial evidence.

2          19. Regarding Criterion #4 – "the nature of the specific duties of the position are

3    [*sic*] so specialized and complex that the knowledge required to perform the duties is

4    usually associated with the attainment of a baccalaureate or higher degree" – True Capital

5    submitted substantial documentation to establish that its position satisfies this criterion, as

6    set out in this regulation. This evidence includes the petitioner's letter outlining the duties

7    of the position in detail (Exhibit D) and the expert opinion discussed above (Exhibit E),

8    and the attorneys' letter (Exhibit D). The Decision concludes that True Capital failed to

9    satisfy Criterion #4 because "the evidence fails to distinguish the difference between the

10   duties to be performed by the beneficiary and those normally performed by Market

11   Research Analyst [*sic*], and how the duties of the proffered position are more specialized

12   and complex" (emphasis added) (Exhibit F). However, the controlling regulation, 8 CFR

13   §214.2(h)(4)(iii)(A)(4), contains no language referring to this type of comparative test.

14   USCIS appears to have unilaterally imposed a novel evidentiary requirement, in direct

15   violation of the Ninth Circuit of Appeals' holding in *Kazarian v. USCIS*, 596 F.3d 1115

16   (9th Cir. 2010) (citing *Love Korean Church v. Chertoff*, 549 F.3d 749, 758 (9th Cir.

17   2008) and holding that USCIS may not unilaterally impose novel substantive or

18   evidentiary requirements beyond those set forth in the pertinent regulations). Despite the

19   non-existence of such a requirement in the regulations, True Capital addressed this issue

20   in their letter included with the original petition – before USCIS requested a description

21   of the position's heightened complexity – stating that "We represent many professional

22   athletes who participate in the NFL, NBA, MLB, WNBA, and other elite sports and they

23   tend to earn substantial sums over a relatively short time span, necessitating non-

1    traditional fiscal planning and financial management" (Exhibit A). Later, in response to

2    USCIS' Request for Evidence (Exhibit D), True Capital also submitted a more detailed

3    letter setting out the specialized and complex duties, together with a letter from its

4    attorneys explaining that, because "the Petitioner's business consists of providing wealth

5    management services in the highly specialized field of high-net-worth world-class

6    entertainers and professional athletes with a shorter time frame in which to yield results,

7    the Petitioner requires a greater degree of knowledge, competence and skill in

8    business/market research and analysis than would be required for employment in a wealth

9    management company that provides services to a general range of clientele..." (emphasis

10   added) (Exhibit D). Despite the fact that True Capital submitted evidence sufficient to

11   meet both the regulatory criterion and the additional, unilaterally imposed criterion that

12   appears nowhere in the regulation, the Decision rejects the petitioner's Criterion #4 claim

13   by merely reiterating the eligibility criteria without specifically addressing any of the

14   evidence submitted or providing any reasoned analysis for the denial. Additionally, the

15   words "in a specific specialty" do not appear anywhere in the regulatory language of

16   Criterion #4. By arbitrarily amending this language to create an additional requirement,

17   USCIS has unilaterally imposed a novel evidentiary requirement beyond those set forth in

18   the pertinent regulation and failed to consider the evidence submitted. For these reasons,

19   this denial constitutes an arbitrary and capricious violation of both *Kazarian v. USCIS*

20   and 8 C.F.R. §214.2(h)(9)(i), which clearly states that, when adjudicating eligibility for H

21   visa status, "[t]he director shall consider all the evidence submitted" (emphasis added).

22        20. The U.S. District Court, in *Fred 26 Importers, Inc. v. United States*

23   *Department of Homeland Security*, 445 F.Supp.2d 1174 (C.D. Cal. 2006), held that the

1    defendant abused its discretion by denying an H-1B petition because it "merely reiterated

2    the criterion and then states that the position does not meet the requirement." *Id.* at 1180.

3    The District Court further held that the defendant had abused its discretion by rendering a

4    denial without providing a basis for the decision, failing to discuss the specific job duties

5    of the position or why they are not specialized or complex, and completely disregarding

6    the expert opinion letters submitted in support of the petition. All of the same bases for

7    finding an abuse of administrative discretion exist in the present case.

8        21. Defendants have arbitrarily and capriciously abused their discretion in

9    denying plaintiffs' H-1B "specialty occupation" petition by:

10       a)  Refusing to address the sufficiency of the evidence submitted, ignoring highly

11       probative evidence in the form of expert testimony documenting that this

12       particular job opening required a bachelor degreed Business Marketing Specialist,

13       and grossly mischaracterizing clear evidence of plaintiff True Capital's degree

14       requirement and past hiring practices, a violation of USCIS' own policies and

15       regulations requiring consideration of all evidence submitted in support of an H-

16       1B nonimmigrant visa petition, per C.F.R. §214.2(h)(9)(i);

17       b)  Completely dismissing the reliability of highly probative expert testimony,

18       additional supporting documentation submitted by True Capital, and relevant job

19       announcements in the industry showing that a baccalaureate or higher degree or

20       its equivalent is normally the minimum requirement for entry into the particular

21       position, per 8 C.F.R. §214.2(h)(4)(iii)(A)(1) (Criterion #1);

22       c)  Ignoring reliable testimony from a well-qualified expert, dismissing relevant

23       job announcements in the industry demonstrating that the degree requirement is

1    common to the industry in parallel positions among similar organizations, and

2    refusing to consider multiple sources of credible evidence showing that the

3    petitioner's particular position is so complex that it can only be performed by an

4    individual with such a degree, per 8 CFR §214.2(h)(4)(iii)(A)(2) (Criterion #2a

5    and Criterion #2b);

6    d)  Completely misstating True Capital's claim that it normally requires a degree

7    for the position, per 8 CFR §214.2(h)(4)(iii)(A)(3) (Criterion #3), by making a

8    factually inaccurate determination – unsupported by any evidence – that True

9    Capital "claims to have hired only individuals with a bachelor's degree or higher

10   in computer science";

11   e)  Refusing to consider any of the evidence submitted to show that the nature of

12   the specific duties of the proffered position are so specialized and complex that

13   knowledge required to perform the duties is usually associated with the attainment

14   of a baccalaureate or higher degree, or its equivalent, per 8 CFR

15   §214.2(h)(4)(iii)(A)(4) (Criterion #4);

16   f)  Holding that an H-1B beneficiary's baccalaureate degree must be limited to

17   only one specific area of study, a position rejected by the U.S. District Court in

18   *Residential Finance Corporation v. USCIS*, Case No. 2:12-CV-00008, 2012 U.S.

19   Dist. LEXIS 32220 (S.D. Ohio, Mar. 12, 2012), and in violation of defendants'

20   own regulations, per 8 CFR §214.2(h)(4)(i)(A)(1) and 8 CFR §214.2(h)(4)(ii);

21   g)  Adjudicating plaintiffs' petition according to a standard of proof higher than

22   the "preponderance of the evidence" standard applicable to these administrative

23   proceedings, as established by the U.S. Supreme Court in *INS v. Cardoza-*

1     *Fonseca*, 480 U.S. 421; 107 S. Ct. 1207; 94 L. Ed. 2d 434; 55 U.S.L.W. 4313

2     (1987) and as applied to nonimmigrant visa adjudications in USCIS'

3     Adjudicator's Field Manual, Chapter 11.1(c) ("...even if the director has some

4     doubt as to the truth, if the petitioner submits relevant, probative, and credible

5     evidence that leads the director to believe that the claim is 'probably true' or

6     'more likely than not,' the applicant or petitioner has satisfied the standard of

7     proof.").

8     22. There is now existing between the parties hereto an actual, justifiable controversy.

9     Therefore, plaintiffs True Capital and Tamara Jaric are entitled to a declaration of their

10    rights and further relief sought.

11                              **PRAYER FOR RELIEF**

12    WHEREFORE, Plaintiffs pray this Court:

13          1. Adjudge and declare that defendants' denial of the plaintiffs' petition for H-1B

14    visa status was arbitrary, capricious, unsupported by substantial evidence, an abuse of

15    discretion or otherwise not in accordance with the law;

16          2. Remand this matter back to defendant USCIS with instructions that the H-1B

17    petition be approved and H-1B status be conferred to plaintiff Tamara Jaric, effective

18    from October 1, 2012 to August 30, 2015, as set forth on Form I-129H (Exhibit A); and

19          3. Grant such other and further relief as this Court may deem just and proper.

20    Dated: _01 / 14_____, 2013

21                                        LAW OFFICES OF WADE J. CHERNICK

22                                        By: _____

23                                              Wade J. Chernick, Esq.

# List of Attached Exhibits

**Exhibit A.........Form I-129 (H-1B Petition) and initial supporting documentation**

**Exhibit B.........Form I-129 Receipt Notice from USCIS**

**Exhibit C.........USCIS' Request for Evidence**

**Exhibit D.........Documents submitted by petitioner in response to USCIS' Request for Evidence**

**Exhibit E.........Expert Opinion Letter by Professor Maxwell K. Hsu, Doctor of Business Administration**

**Exhibit F.........USCIS' Notice of Decision Denying I-129**

# Exhibit

# A

# H1B Application
# "CAP-GAP"

### ⊟FILE COPY

## Form I-129
## Form I-129 Supplement H
## Form I-129 H-1B Data Collection

Employer Name:  *True Capital Management, LLC.*
Beneficiary:  Tamara JARIC

20.

OMB No. 1615-0105; Expires 04/30/2012

**G-28, Notice of Entry of Appearance
as Attorney or Accredited Representative**

Department of Homeland Security

---

## Part 1. Notice of Appearance as Attorney or Accredited Representative

**A. This appearance is in regard to immigration matters before:**

☒ USCIS - List the form number(s): **Form I-129 (H)**          ☐ CBP - List the specific matter in which appearance is entered:

☐ ICE - List the specific matter in which appearance is entered:

**B. I hereby enter my appearance as attorney or accredited representative at the request of:**

List Petitioner, Applicant, or Respondent. NOTE: Provide the mailing address of Petitioner, Applicant, or Respondent being represented, and not the address of the attorney or accredited representative, except when filed under VAWA.

| Principal Petitioner, Applicant, or Respondent | | | A Number or Receipt Number, if any | ☒ Petitioner |
|---|---|---|---|---|
| Name: Last **Goodman** | First **Heather** | Middle | | ☐ Applicant |
| **True Capital Management, LLC** | | | | ☐ Respondent |

| Address: Street Number and Street Name | Apt. No. | City | State | Zip Code |
|---|---|---|---|---|
| **101 Montgomery ST, Suite 2150** | | **San Francisco** | **CA** | **91404** |

Pursuant to the Privacy Act of 1974 and DHS policy, I hereby consent to the disclosure to the named Attorney or Accredited Representative of any record pertaining to me that appears in any system of records of USCIS, USCBP, or USICE.

Signature of Petitioner, Applicant, or Respondent          Date

**Heather Goodman** x _(signature)_                          **3/21/12**

---

## Part 2. Information about Attorney or Accredited Representative *(Check applicable items(s) below)*

**A.** ☒ I am an attorney and a member in good standing of the bar of the highest court(s) of the following State(s), possession(s), territory(ies), commonwealth(s), or the District of Columbia: **Florida Supreme Court**

I am not ☒ or ☐ am subject to any order of any court or administrative agency disbarring, suspending, enjoining, restraining, or otherwise restricting me in the practice of law (If you are subject to any order(s), explain fully on reverse side).

**B.** ☐ I am an accredited representative of the following qualified non-profit religious, charitable, social service, or similar organization established in the United States, so recognized by the Department of Justice, Board of Immigration Appeals pursuant to 8 CFR 1292.2. Provide name of organization and expiration date of accreditation:

**C.** ☐ I am associated with _____

The attorney or accredited representative of record previously filed Form G-28 in this case, and my appearance as an attorney or accredited representative is at his or her request (If you check this item, also complete item A or B above in Part 2, whichever is appropriate).

---

## Part 3. Name and Signature of Attorney or Accredited Representative

I have read and understand the regulations and conditions contained in 8 CFR 103.2 and 292 governing appearances and representation before the Department of Homeland Security. I declare under penalty of perjury under the laws of the United States that the information I have provided on this form is true and correct.

| Name of Attorney or Accredited Representative | Attorney Bar Number(s), if any |
|---|---|
| **Mindy S. Rodney/Carol A. Bernstein** | |
| Signature of Attorney or Accredited Representative | Date |
| _mindy l Rodney_ (SIGNATURE ON ORIGINAL 6.28) | |

Complete Address of Attorney or Organization of Accredited Representative (Street Number and Street Name, Suite No., City, State, Zip Code)

**Rodney & Bernstein, P.A.  1925 Brickell Avenue, Suite D-207  Miami, FL 33129**

| Phone Number *(Include area code)* | Fax Number, if any *(Include area code)* | E-Mail Address, if any |
|---|---|---|
| **(305) 643-9600** | **(305) 856-8056** | **mindy@mindylaw.com** |

Form G-28 (Rev. 04/22/09)N

21

OMB No. 1615-0009; Expires 10/31/2013

# I-129, Petition for a
# Nonimmigrant Worker

**Department of Homeland Security**
U.S. Citizenship and Immigration Services

---

## START HERE - Type or print in black ink.

### Part 1. Petitioner Information

*(If the employer is an individual, complete **Number 1**; Organizations complete **Number 2**.)* Use the mailing address of the petitioner.

1. Legal Name of Employer:

   a. Last Name *(Family Name)*

   b. First Name *(Given Name)*        c. Full Middle Name

2. Company or Organization:
   Name of Company or Organization

   **True Capital Management, LLC**

3. Mailing Address:

   a. C/O: *(In Care Of, if any)*

   **Heather Goodman**

   b. Street Number and Name        c. Suite/Apt. Number

   **101 Montgomery ST, Suite 2150**

   d. City        e. State/Province

   **San Francisco**        **CA**

   f. Country        g. Zip/Postal Code

   **USA**        **91404**

   h. Telephone Number (include area code) *(Do not leave spaces or type any special characters)*

   **415-538-3600**

   i. E-Mail Address        j. Federal Employer Identification Number

   **heather@truecapitalmgmt.com**        **20-8138813**

   k. Individual Tax Number        l. Social Security Number

### Receipt

Class: _____

# of Workers: _____

Job Code: _____

Validity Dates: _____

From: _____

To: _____

☐ **Classification Approved**
☐ Consulate/POE/PFI Notified At
☐ Extension Granted
☐ COS/Extension Granted

**Partial Approval** *(explain)*

**Action Block**

---



5679

Form I-129  (10/07/11) Y

22

## Part 2.  Information About This Petition  *(See instructions for fee information.)*

1. **Requested Nonimmigrant Classification**  *(Write classification symbol):*  | H-1B |

2. **Basis for Classification** *(Check one):*

   ☒ **a.** New employment.

   ☐ **b.** Continuation of previously approved employment without change with the same employer.

   ☐ **c.** Change in previously approved employment.

   ☐ **d.** New concurrent employment.

   ☐ **e.** Change of employer.

   ☐ **f.** Amended petition.

3. Provide the most recent petition/application receipt number for the beneficiary. If none exists, indicate "N/A."

   |  |

4. **Requested Action** *(Check one):*

   ☐ **a.** Notify the office in **Part 4** so each beneficiary can obtain a visa or be admitted. **(NOTE:** *A petition is not required for an E-1, E-2, H-1B1 Chile/Singapore, or TN visa.)*

   ☒ **b.** Change each beneficiary's status and extend their stay since he, she, or they are all now in the U.S. in another status *(see instructions for limitations).* This is available only where you check "New Employment" in **Item 2,** above. CAP GAP ELIGIBLE

   ☐ **c.** Extend the stay of each beneficiary since he, she, or they now hold this status.

   ☐ **d.** Amend the stay of each beneficiary since he, she, or they now hold this status.

   ☐ **e.** Extend the status of a nonimmigrant classification based on a Free Trade Agreement. *(See Free Trade Supplement for TN and H1B1 to Form I-129.)*

   ☐ **f.** Change status to a nonimmigrant classification based on a Free Trade Agreement. *(See Free Trade Supplement for TN and H1B1 to Form I-129.)*

5. **Total number of workers in petition** *(See instructions relating to when more than one worker can be included.):*  | 1 |



**Part 3. Beneficiary Information:** Information about the beneficiary/beneficiaries you are filing for. *Complete the blocks below. Use the continuation sheet to name each beneficiary included in this petition.*

1. If an Entertainment Group, Give the Group Name

| **a.** Family Name *(Last Name)* | **b.** Given Name *(First Name)* | **c.** Full Middle Name |
|---|---|---|
| Jaric | Tamara | |

**d.** All Other Names Used *(include aliases, maiden name and names from all previous marriages)*

**e.** Date of Birth *(mm/dd/yyyy)*   **f.** Gender    **g.** U.S. Social Security Number *(if any)*    **h.** A-Number *(if any)*

| 09/15/1982 | ☐ Male  ☒ Female | | A- |

**i.** Country of Birth    **j.** Province of Birth    **k.** Country of Citizenship

| Serbia | Belgrade | Serbia |

2. If in the United States, complete the following:

**a.** Date of Last Arrival *(mm/dd/yyyy)*    **b.** I-94 Number *(Arrival/Departure Document)*    **c.** Current Nonimmigrant Status

| 08/10/2010 | 987700230 24 | (F-1) OPT + 60 days |

**d.** Date Status Expires *(mm/dd/yyyy) or D/S*    **e.** Student & Exchange Visitor Information System (SEVIS) Number *(if any)*    **f.** Employment Authorization Document (EAD) Number *(if any)*

| 04/17/12 | N0004574178 | EAC1190039450 |

**g.** Passport Number    **h.** Date Passport Issued *(mm/dd/yyyy)*    **i.** Date Passport Expires *(mm/dd/yyyy)*

| 006990327 | 12/25/2008 | 12/25/2018 |

**j.** Current U.S. Address (if applicable)

1150 Union St, 401, San Francisco, CA 94109

## Part 4. Processing Information

1. If the beneficiary or beneficiaries named in **Part 3** is/are outside the United States or a requested extension of stay or change of status cannot be granted, state the U.S. consulate or inspection facility you want notified if this petition is approved.

**a.** Type of Office *(Check one)*: ☒ Consulate    ☐ Pre-flight inspection    ☐ Port of Entry

**b.** Office Address *(City)*    **c.** U.S. State or Foreign Country

| Belgrade | Serbia |

**d.** Beneficiary's Foreign Address

Rige od Fere 2, 11000 Belgrade Serbia



Form I-129 (10/07/11) Y Page 3

24

## Part 4.  Processing Information *(Continued)*

2. Does each person in this petition have a valid passport?

☐ Not required to have passport          ☐ No - Go to **Page 7, Part 9** and write your explanation          ☒ Yes

| | | | |
|---|---|---|---|
| 3. | Are you filing any other petitions with this one? | ☒ No | ☐ Yes - How many? |
| 4. | Are applications for replacement/initial I-94s being filed with this petition? | ☒ No | ☐ Yes - How many? |
| 5. | Are applications by dependents being filed with this petition? | ☒ No | ☐ Yes - How many? |
| 6. | Is any beneficiary in this petition in removal proceedings? | ☒ No | ☐ Yes - explain on **Page 7, Part 9** |
| 7. | Have you ever filed an immigrant petition for any beneficiary in this petition? | ☒ No | ☐ Yes - explain on **Page 7, Part 9** |

8. If you indicated you were filing a new petition in **Part 2** within the past 7 years, has any beneficiary in this petition:

| | | |
|---|---|---|
| a. Ever been given the classification you are now requesting? | ☒ No | ☐ Yes - explain on **Page 7, Part 9** |
| b. Ever been denied the classification you are now requesting? | ☒ No | ☐ Yes - explain on **Page 7, Part 9** |

| | | | |
|---|---|---|---|
| 9. | Have you ever previously filed a petition for this beneficiary? | ☒ No | ☐ Yes - explain on **Page 7, Part 9** |
| 10. | If you are filing for an entertainment group, has any beneficiary in this petition not been with the group for at least 1 year?     **N/A** | ☐ No | ☐ Yes - explain on **Page 7, Part 9** |
| 11a. | Has any beneficiary in this petition ever been a J-1 exchange visitor or J-2 dependent of a J-1 exchange visitor? | ☒ No | ☐ Yes |

11b. If yes to 11a, provide the dates the beneficiary maintained status as a J-1 exchange visitor or J-2 dependent. Also, provide evidence of this status by attaching a copy of either a DS-2019, Certificate of Eligibility for Exchange Visitor status, a Form IAP-66, or a copy of the passport that includes the J visa stamp.

---

## Part 5.  Basic Information About the Proposed Employment and Employer  *(Attach the supplement relating to the classification you are requesting.)*

| 1. Job Title | 2. LCA or ETA Case Number |
|---|---|
| **Business Marketing Specialist** | **I-200-12082-915551** |

3. Address where the beneficiary(es) will work if different from address in **Part 1.** *(Street number and name, city/town, state, zip code)*

4. Is an itinerary included with the petition?  ☒ No  ☐ Yes          5. Will the beneficiary work off-site?          ☒ No  ☐ Yes



**Part 5. Basic Information About the Proposed Employment and Employer** (*Attach the supplement relating to the classification you are requesting.*)  (*Continued*)

6. Will the beneficiary(ies) work exclusively in the CNMI?  ☒ No    ☐ Yes

7. Is this a full-time position?
☒ No    ☐ Yes  If "No," Hours per week:  **10-20**

8. Wages per week or per year:
**$25.00**    **per hour**

9. Other Compensation *(Explain)*

10. Dates of intended employment *(mm/dd/yyyy)*:    From: **10/01/2012**    To: **08/30/2015**

11. Type of Business

**Wealth Management Firm**

| 12. Year Established | 13. Current Number of Employees in the U.S. | 14. Gross Annual Income | 15. Net Annual Income |
|---|---|---|---|
| 2006 | 9 | $2,500,000 | |

**Part 6.  Certification Regarding the Release of Controlled Technology or Technical Data to Foreign Persons in the United States**

(For H-1B, H-1B1 Chile/Singapore, L-1, and O-1A petitions only. This section of the form is not required for all other classifications. See **Page 3** of the Instructions before completing this section.)

**Check Box 1 or Box 2 as appropriate:**

With respect to the technology or technical data the petitioner will release or otherwise provide access to the beneficiary, the petitioner certifies that it has reviewed the Export Administration Regulations (EAR) and the International Traffic in Arms Regulations (ITAR) and has determined that:

☒  1. A license is not required from either U.S. Department of Commerce or the U.S. Department of State to release such technology or technical data to the foreign person; or

☐  2. A license is required from the U.S. Department of Commerce and/or the U.S. Department of State to release such technology or technical data to the beneficiary and the petitioner will prevent access to the controlled technology or technical data by the beneficiary until and unless the petitioner has received the required license or other authorization to release it to the beneficiary.



**Part 7.   Signature**  *Read the information on penalties in the instructions before completing this section.*

I certify, under penalty of perjury that this petition and the evidence submitted with it are true and correct to the best of my knowledge.
I authorize the release of any information from my records, or from the petitioning organization's records that U.S. Citizenship and
Immigration Services needs to determine eligibility for the benefit being sought. I recognize the authority of USCIS to conduct audits
of this petition using publicly available open source information. I also recognize that supporting evidence submitted may be verified
by USCIS through any means determined appropriate by USCIS, including but not limited to, on-site compliance reviews.

If filing this petition on behalf of an organization, I certify that I am authorized to do so by the organization.

| Signature | Daytime Phone Number *(Area/Country Code)* |
|---|---|
| | 415-538-3600 |

| Print Name | Date *(mm/dd/yyyy)* |
|---|---|
| Heather Goodman | 03/21/2012 |

**NOTE:** If you do not completely fill out this form and the required supplement, or fail to submit required documents listed in the
instructions, the person(s) filed for may not be found eligible for the requested benefit and this petition may be denied.

**Part 8.   Signature of Person Preparing Form, If Other Than Above**

I declare that I prepared this petition at the request of the above person and I certify that it is true and correct to the best of my
knowledge.

| Signature | Daytime Phone Number *(Area/Country Code)* |
|---|---|
| | |

| Print Name | Date *(mm/dd/yyyy)* |
|---|---|
| | |

**Firm Name and Address**

| |
|---|
| |



LAW OFFICES
**RODNEY & BERNSTEIN, P.A.**
1925 BRICKELL AVENUE, SUITE D-207
MIAMI, FLORIDA 33129
TEL. (305) 643-9600
FAX: (305) 856-8056

MINDY S. RODNEY
BOARD CERTIFIED IN
IMMIGRATION & NATIONALITY LAW

CAROL A. BERNSTEIN
BOARD CERTIFIED IN
IMMIGRATION & NATIONALITY LAW

e-mail -carol@mindylaw.com

March 30, 2012

# ALIEN'S ELIGIBILITY FOR CHANGE-OF-STATUS PURSUANT TO "CAP GAP" PROVISION of 8 CFR §214.2(f)(5)

Dear USCIS Vermont Service Center:

The Beneficiary in this petition is eligible to change status to "H-1B" pursuant to the "Cap Gap" provision of 8 CFR §214.2(f)(5) as this petition was "timely filed" and the H-1 employment start date is October 1st of the next fiscal year.

The CIS' rule, published in the Federal Register (73 FR 18944-18956, 04/08/2008) and promulgated in 8 CFR §214.2(f)(5)(vi)(A), ameliorates the so-called "cap-gap"' problem by extending the authorized period of stay for all F-1 students who have a timely filed H-1B petition and change of status request (filed under the cap for the next fiscal year) pending with USCIS. If USCIS approves the H-1B petition, the students will have an extension that enables them to remain in the United States until October 1st of the following fiscal year.

In this case, the Beneficiary's F-1 status is valid to April 23, 2012 (the end of the 60-day grace period following the expiration of her OPT). This petition was filed after April 1, 2012 and before the expiration of her F-1 status. The requested start date is October 1st. Therefore, Beneficiary is eligibility for the provisions of the "cap-gap extension" of 8 CFR §214.2(f)(5)(vi)(A).

"Question and Answers" on the Cap-Gap Regulations, published by the USCIS on 4/2/2010, provide further clarification (copy attached):

Q3. Which petitions and beneficiaries qualify for a cap-gap extension?

*A3*. H-1B petitions that are timely filed on behalf of an eligible F-1 student and request a change of status to H-1B on October 1, 2012 qualify for a cap-gap extension.
Timely filed means that the H-1B petition (indicating change of status rather than consular processing) was filed during the H-1B acceptance period, which begins Monday April 2, 2012, while the student's authorized F-1 duration of status (D/S) admission was still in effect (**including any period of time during** the academic course of study, any authorized periods of post-completion Optional Practical Training (OPT), and **the 60-day departure preparation period, commonly known as the "grace period"**).

$2\oint$

Once a timely filed request to change status to H-1B on October 1, 2012 has been made, the automatic cap-gap extension will begin and will continue until the H-1B petition adjudication process has been completed. If the student's H-1B petition is selected and approved, the student's extension will continue through September 30, 2012 unless the petition is denied, withdrawn, or revoked.

Therefore, if the petition is approved, this alien would be eligible for a change-of-status.

Tamara Jaric is authorized to remain in the US in F-1 status pending adjudication.

Thank you for your attention.

Very truly yours,
RODNEY & BERNSTEIN, P.A.

Mindy S. Rodney

29

USCIS - Extension of Post-Completion Optional Practical Training (OPT) and F-1 Status for Eligible Students under the H-1B Cap-Gap Regula... Page 1 of 2

Case 3:13-cv-00261-JSC    Document 1-2    Filed 01/18/13    Page 30 of 61

**U.S. Citizenship and Immigration Services**

| FORMS | NEWS | RESOURCES | LAWS | OUTREACH | ABOUT US |

Public Releases by Topic
News Releases
Updates
Questions and Answers
Fact Sheets
Media Contacts
Alerts
Outstanding Americans by Choice

Home > NEWS > Questions and Answers                                    Printer Friendly

## Extension of Post-Completion Optional Practical Training (OPT) and F-1 Status for Eligible Students under the H-1B Cap-Gap Regulations Questions and Answers

### Introduction

These Questions & Answers address the automatic extension of F-1 student status in the United States for certain students with pending or approved H-1B petitions (indicating a request for change of status from F-1 to H-1B) for an employment start date of October 1, 2012 under the Fiscal Year (FY) 2013 H-1B cap.

### Questions and Answers

**Q1. What is "Cap-Gap"?**

A1. Current regulations allow certain students with pending or approved H-1B petitions to remain in F-1 status during the period of time when an F-1 student's status and work authorization would otherwise expire through the start date of their approved H-1B employment period. This is referred to as filling the "cap-gap," meaning the regulations provide a way of filling the "gap" between the end of F-1 status and the beginning of H-1B status that might otherwise occur if F-1 status is not extended for qualifying students.

**Q2. How does "Cap-Gap" Occur?**

A2. An employer may not file, and USCIS may not accept, an H-1B petition submitted more than six months in advance of the date of actual need for the beneficiary's services or training. As a result, the earliest date than an employer can file an FY 2013 H-1B cap -subject petition is April 2, 2012 for employment starting not before October 1, 2012. If USCIS approves the H-1B petition and the accompanying change of status request, the earliest date that the student may start the approved H-1B employment is October 1, 2012. Consequently, F-1 students whose periods of authorized stay expire before October 1, 2012, and who do not qualify for a cap-gap extension, are required to leave the United States, apply for an H-1B visa at a consular post abroad, and then seek readmission to the United States in H-1B status, for the dates reflected on the approved H-1B petition.

**Q3. Which petitions and beneficiaries qualify for a cap-gap extension?**

A3. H-1B petitions that are timely filed on behalf of an eligible F-1 student and request a change of status to H-1B on October 1, 2012 qualify for a cap-gap extension.

Timely filed means that the H-1B petition (indicating change of status rather than consular processing) was filed during the H-1B acceptance period, which begins April 2, 2012, while the student's authorized F-1 duration of status (D/S) admission was still in effect (including any period of time during the academic course of study, any authorized periods of post-completion Optional Practical Training (OPT), and the 60-day departure preparation period, commonly known as the "grace period").

Once a timely filed request to change status to H-1B on October 1, 2012 has been made, the automatic cap-gap extension will begin and will continue until the H-1B petition adjudication process has been completed. If the student's H-1B petition is selected , and approved, the student's extension will continue through September 30, 2012 unless the petition is denied, withdrawn, or revoked. If the student's H-1B petition is not selected, the student will have the standard 60-day grace period from the date of the rejection notice or their program end date, whichever is later, to prepare for and depart the United States.

Students are strongly encouraged to stay in close communication with their petitioning employer during the cap-gap extension period for status updates on the H-1B petition processing.

**Q4. How does a student covered under the cap-gap extension obtain proof of continuing status?**

A4. The student should go to their Designated School Official (DSO) with evidence of a timely filed H-1B petition (indicating a request for change of status rather than for consular processing), such as a copy of the petition and a FedEx, UPS, or USPS Express/certified mail receipt. The student's DSO will issue a preliminary cap-gap I-20 showing an extension until June 1, 2012.

If the H-1B petition is selected for adjudication, the student should return to his or her DSO with a copy of the petitioning employer's Form I-797, Notice of Action, with a valid receipt number, indicating that the petition was filed and accepted. The student's DSO will issue a new cap-gap I-20 indicating the continued extension of F-1 status.

**Q5. Is a student who becomes eligible for a cap-gap extension of status and employment authorization, but whose H-1B petition is subsequently rejected, denied or revoked, still allowed the 60-day grace period?**

A5. If USCIS denies, rejects, or revokes an H-1B petition filed on behalf of an F-1 student covered by the automatic cap-gap extension of status, the student will have the standard 60-day grace period (from the date of the notification of the denial, rejection, or revocation of the petition) before he or she is required to depart the United States.

For denied cases, it should be noted that the 60-day grace period does not apply to an F-1 student whose accompanying change of status request is denied due to the discovery of a status violation. The student in this situation is not eligible for the automatic cap-gap extension of status or the 60-day grace period. Similarly, the 60-day grace period and automatic cap-gap extension of status would not apply to the case of a student whose petition was revoked based on a finding of fraud or misrepresentation discovered following approval. In both of these instances, the student would be required to leave the United States immediately.

**Q6. May students travel outside the United States during a cap-gap extension period and return in F-1 status?**

A6. No. A student granted a cap-gap extension who elects to travel outside the United States during the cap-gap extension period will not be able to return in F-1 status. The student will need to apply for an H-1B visa at a consular post abroad prior to returning. As the H-1B petition is for an October 1, 2012 start date, the student should be prepared to adjust his or her travel plans, accordingly.

**Q7. What if a student's post-completion OPT has expired and the student is in a valid grace period when an H-1B cap-subject petition is filed on their behalf? It appears that F-1 status would be extended, but would OPT also be extended?**

A7. F-1 students who have entered the 60-day grace period are not employment-authorized. Consequently, if an H-1B cap-subject petition is filed on the behalf of a student who has entered the 60-day grace period, the student will receive the automatic cap-gap extension of his or her F-1 status, but will not become employment-authorized (since the student was not employment-authorized at the time H-1B petition was filed, there is no employment authorization to be extended.)

**Q8. Do the limits on unemployment time apply to students with a cap-gap extension?**

A8. Yes. The 90-day limitation on unemployment during the initial post-completion OPT authorization continues during the cap-gap extension.

**Q9. What is a STEM OPT extension?**

A9. F-1 students who receive science, technology, engineering, and mathematics (STEM) degrees included on the STEM Designated Degree Program List, are employed by employers enrolled in E-Verify, and who have received an initial grant of post-completion OPT employment authorization related to such a degree, may apply for a 17-month extension of this authorization. F-1 students may obtain additional information about STEM OPT extensions on the Student and Exchange Visitor Program website at www.ice.gov/sevis.

**Q10. May a student eligible for a cap-gap extension of post-completion OPT employment authorization and F-1 status apply for a STEM OPT extension while he or she is in the cap-gap extension period?**

A10. Yes. However, such application may not be made once the cap-gap extension period is terminated (e.g., if the H-1B petition is rejected, denied, or revoked), and the student has entered the 90-day departure preparation period.

**Q11. In recent years, employers have been able to file H-1B cap-subject petitions after April 1, and have not always requested an October 1 start date. However, some students' OPT end dates were nevertheless shortened to September 30, even though their H-1B employment would not begin until a later date. What should the student do to correct this?**

A11. The student should contact their DSO. The DSO may request a data fix in SEVIS by contacting the SEVIS helpdesk.

**Q12. If the student finds a new H-1B job, can he or she continue working with his/her approved EAD while the data fix in SEVIS is pending?**

A12. Yes, if the (former) H-1B employer timely withdrew the H-1B petition and the following conditions are true:

30

USC - Extension of Post-Completion Optional Practical Training (OPT) and F-1 Status for Eligible Students under the H-1B Cap-Gap Regula... Page 2 of 2

Case 3:13-cv-00261-JSC   Document 1-2   Filed 01/18/13   Page 31 of 61

§ the student finds empl..  [...]opriate to his or her OPT;

§ the period of OPT is unexpired; and

§ the DSO has requested a data fix in SEVIS.

Note: If the student had to file Form I-539 to request reinstatement to F-1 student status, the student may not work or attend classes until the reinstatement is approved.

Q13. If the student has an approved H-1B petition and change of status, but is laid off/terminated by the H-1B employer before the effective date, and the student has an unexpired EAD issued for post-completion OPT, can the student retrieve any unused OPT?

A 13.Yes. The student will remain in student status and can continue working OPT using the unexpired EAD until the H-1B change of status goes into effect. The student also needs to make sure that USCIS receives a withdrawal request from the petitioner before the H-1B change of status effective date. This will prevent the student from changing to H-1B status. Once the petition has been revoked, the student must provide their DSO with a copy of the USCIS acknowledgement of withdrawal (i.e., the notice of revocation). The DSO may then request a data fix in SEVIS, to prevent the student from being terminated in SEVIS on the H-1B effective date, by contacting the SEVIS helpdesk.

If USCIS does not receive the withdrawal request prior to the H-1B petition change of status effective date, then the student will need to stop working, file a Form I-539 to request reinstatement, and wait until the reinstatement request is approved before resuming employment.

Q14. In cases where a student is authorized to work OPT past the H-1B change of status effective date, can the student continue working on OPT if a request to revoke/withdraw the H-1B change of status is submitted to USCIS?

A 14. If the H-1B revocation occurs before the H-1B change of status effective date, the student may continue working while the data fix remains pending, because the student will still be in valid F-1 status.

If the H-1B revocation occurs on or after the H-1B change of status effective date, the student will need to stop working before the H-1B change of status effective date, apply for reinstatement, and wait until the reinstatement request is approved before resuming employment.

NOTE: This is NOT a cap-gap situation since the student has an EAD authorizing OPT beyond the H-1B change of status effective date.

Q15. Do students remain in valid F-1 status while the request to change the OPT end date is pending?

A 15. If the H-1B revocation occurs before the H-1B change of status effective date, the student is still deemed to be in F-1 status while the data fix is pending.

If the H-1B revocation occurs after the H-1B change of status effective date, the student will not be in valid F-1 status and will therefore either need to apply for reinstatement or depart the United States.

Last updated:03/29/2012

| InfoPass | Citizenship | U.S. Department of Homeland Security | Freedom of Information Act (FOIA) |
|---|---|---|---|
| My Case Status | Green Card | U.S. Customs & Border Protection | No FEAR Act |
| Change of Address | Family | U.S. Immigration & Customs Enforcement | Website Policies |
| Visa Bulletin | Working in the U.S. | White House | Social Media Policy |
| Passports | Humanitarian | U.S. Department of State | Privacy and Legal Disclaimers |
| E-Verify | Adoption | USA.gov | Accessibility |
| Careers at USCIS | Military | | Plug-Ins |
| Site Map (Index) | Avoid Scams | | Adobe Reader |
| Contact Us | Genealogy | | Windows Media Player |
| | Visit the U.S. | | Archive |

*31*

OMB No. 1615-0009; Expires 10/07/2013

**Department of Homeland Security**
U.S. Citizenship and Immigration Services

# H Classification
## Supplement to Form I-129

1. Name of the petitioner

| True Capital Management, LLC |
|---|

2. Name of the beneficiary or if this petition includes multiple beneficiaries, the total number of beneficiaries

| Jaric, Tamara |
|---|

3. List each beneficiary's prior periods of stay in H or L classification in the United States for the last 6 years (beneficiaries requesting H-2A or H-2B classification need only list the last 3 years). Be sure to only list those periods in which each beneficiary was actually in the United States in an H or L classification. Do not include periods in which the beneficiary was in a dependent status, for example, H-4 or L-2 status.

NOTE: Submit photocopies of Forms I-94, I-797, and/or other USCIS issued documents noting these periods of stay in the H or L classification. If more space is needed, attach an additional sheet.

| Subject's Name | Period of Stay *(mm/dd/yyyy)* | |
|---|---|---|
| | From | To |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

4. Classification sought *(Check one)*:

☒ **a.** H-1B Specialty Occupation

☐ **b.** H-1B2 Exceptional services relating to a cooperative research and development project administered by the U.S. Department of Defense (DOD)

☐ **c.** H-1B3 Fashion model of national or international acclaim

☐ **d.** H-1C Registered Nurse

☐ **e.** H-2A Agricultural worker

☐ **f.** H-2B Non-agricultural worker

☐ **g.** H-3 Trainee

☐ **h.** H-3 Special education exchange visitor program

5. Are you filing this petition on behalf of an alien subject to the Guam-CNMI cap exemption under Public Law 110-229?    ☒ No    ☐ Yes

---

## Section 1. Complete This Section If Filing for H-1B Classification

1. Describe the proposed duties

**Please see attached**

2. Beneficiary's present occupation and summary of prior work experience

**Please see attached**



Form I-129 Supplement H (10/07/11) Y Page 11

*32*

## Section 1. Complete This Section If Filing for H-1B Classification *(Continued)*

### *Statement for H-1B specialty occupations only:*

By filing this petition, I agree to, and will abide by, the terms of the labor condition application (LCA) for the duration of the beneficiary's authorized period of stay for H-1B employment. I certify that I will maintain a valid employer-employee relationship with the beneficiary at all times. If the beneficiary is assigned to a position in a new location I will obtain and post an LCA for that site prior to reassignment.

I further understand that I cannot charge the beneficiary the ACWIA fee, and that any other required reimbursement will be considered an offset against wages and benefits paid relative to the LCA.

| Signature of Petitioner | Print or Type Name | Date *(mm/dd/yyyy)* |
|---|---|---|
| | Heather Goodman | 3/21/12 |

### *Statement for H-1B specialty occupations and U.S. Department of Defense projects:*

As an authorized official of the employer, I certify that the employer will be liable for the reasonable costs of return transportation of the alien abroad if the beneficiary is dismissed from employment by the employer before the end of the period of authorized stay.

| Signature of Authorized Official of Employer | Print or Type Name | Date *(mm/dd/yyyy)* |
|---|---|---|
| | Heather Goodman | 3/21/12 |

### *Statement for H-1B U.S. Department of Defense projects only:*

I certify that the beneficiary will be working on a cooperative research and development project or a co-production project under a reciprocal government-to-government agreement administered by the U.S. Department of Defense.

| Signature of DOD Project Manager | Print or Type Name | Date *(mm/dd/yyyy)* |
|---|---|---|
| | | |

## Section 2. Complete This Section If Filing For H-1C Classification

I certify under penalty of perjury, under the laws of the United States of America, that this attachment and the evidence submitted with it is true and correct. If filing this petition on behalf of an organization or entity, I certify that I am empowered to do so by that organization or entity. I authorize the release of any information from my records, or from the petitioning organization or entity's records, that U.S. Citizenship and Immigration Services may need to determine eligibility for the benefit being sought.

| Signature | Print or Type Name |
|---|---|
| | |

| Title | Date *(mm/dd/yyyy)* |
|---|---|
| | |

**Firm Name and Address**

| |
|---|
| |



33



Berkeley College

TAMARA JARIC

BACHELOR OF BUSINESS ADMINISTRATION

DECEMBER 2010



**U.S. Department of Justice**
Immigration and Naturalization Service

Page 1

SEVIS

36

SEVIS

**DEPARTMENT DE HOMELAND SECURITY**
U.S. Customs and Border Protection

Departure Record

9811100230  24   AUG 1 10 2003

Warning - a nonimmigrant who accepts unauthorized employment is subject to deportation.

Important - Retain this permit in your possession; you must surrender it when you leave the U.S.



101 Montgomery Street • Suite 2150 • San Francisco, CA 94104 • tel: 415.538.3600 • fax: 415.538.3601

March 22, 2012

U.S. Citizenship & Immigration Services
Vermont Service Center
St. Albans, VT

### RE: <u>H-1B APPLICATION ON BEHALF OF TAMARA JARIC</u>

Dear USCIS:

True Capital Management, LLC. is a global wealth management firm created to service the financial needs of professional athletes, entertainers and high net worth individuals. We offer custom tailored plans and advice to our 150 +/- clients, applying a comprehensive life management approach. We represent many professional athletes who participate in the NFL, NBA, MLB, WNBA, and other elite sports and they tend to earn substantial sums over a relatively short time span, necessitating non-traditional fiscal planning and financial management.

In order to create successful investment and financial management plans, it is critical to create the proper strategy and develop asset allocation models, utilizing both traditional and alternative investments. Needles to say, extensive research and analysis go into developing these plans and strategies.

At this time, we are interested in employing Tamara Jaric as a professional Business Marketing Specialist to assist us with our goals. This position will involve researching, analyzing, and engaging in business and marketing strategies to increase client base and company growth. Ms. Jaric will research and advise on effective management methods to insure long term growth, effectiveness and competition. She will assist Senior Advisors in overseeing client expenditures, executing budget, and budget management. Ms. Jaric will research methods to increase market share and target market segmentation, analyze, review and discuss financial matters with clientele and manage existing relationships. She will prepare and present potential client budgets and spending summaries, utilizing theoretical principles of business, marketing and finance needed for this position. She will also prepare and execute marketing and competitor data to determine expansion and business opportunities. We require an individual with a minimum of a Bachelor's degree in Business, preferably with a concentration in Marketing.

Ms. Tamara Jaric possesses a Bachelor's degree in Business Administration with a concentration in Marketing and design from Berkley College. We believe that her educational background and professional contacts makes her an ideal candidate for this position. We would, therefore, appreciate your favorable review to our request for an H-1B status on her behalf, so she may contribute to our organization and the well being of our clients.

Sincerely,

Heather Goodman
Managing Director

40



A TRUE APPROACH TO WEALTH MANAGEMENT

41



## OUR HISTORY

Doug Raetz and Heather Goodman formed True Capital in 2006 with the goal of creating an open-architecture wealth management platform specifically designed for professional athletes, entertainers and high net worth individuals. Through this innovative paradigm, True Capital forged a new path using proven methods which empower clients to grow their wealth long into retirement. Since inception, True Capital has successfully grown its asset base and expanded advisory services to athletes in all sports. Equally as important are True Capital's philanthropic efforts in the community and our commitment to making a difference. Recognized by the FBI for our leadership and active participation in the National Child Identification Program, True Capital is dedicated to helping protect America's youth. Today, these strategic partnerships combined with our proven comprehensive approach to wealth management make True Capital a global leader in private wealth management.

# [ SERVICES ]

Our team of experienced financial advisors and client relations managers work hand-in-hand to provide high quality services to assist you and your family.

### Private Banking
Our tenured relationship with private banks and institutions provides you with a team of experienced professionals who offer integrated banking solutions delivered with the highest level of service. Whether managing credit, deposits or cash, our banks work seamlessly with your client relations manager to customize solutions that meet your banking needs.

### Cash Management & Budgeting
We will create and manage a financial plan to allocate current and future income towards expenses, debt repayment, savings and investments to ensure you make wise decisions related to your lifestyle. We have developed a systematic review process to monitor cash flow that allows you to maintain your lifestyle and continue saving for the future.

### Investment Management
We work with you to build an investment plan that encompasses your goals and the levels of risk you are prepared to take. Your relationship with us is based on accountability, which means we will meet with you regularly to review our progress and measure our results compared to your objectives.

### Insurance & Risk Management
Planning for the unexpected may be the most difficult aspect of wealth management. We believe that it is important for you to be prepared for the unknown. We work with insurance specialists and providers to assist in minimizing your risk and protecting your assets through life, disability, umbrella, property and casualty insurance.

### Lending & Credit Monitoring
Building financial security requires careful management of personal liabilities. Whether you are buying a home, purchasing a car or establishing a line of credit, True Capital is here for your financing needs. In addition, protecting your credit is critical to acquiring appropriate financing. We have developed a program to monitor and maintain your credit rating in order to maximize your borrowing power.



### Real Estate
Managing real estate is an important part of your overall wealth management. We can assist you with a wide range of services related to your real estate transactions. Our team provides consulting services associated with contract negotiation, financing, due diligence and advisory oversight of the execution of purchases and sales of property.

### Tax Advisory
Tax planning is essential to the development and execution of your overall financial plan. To that end, we partner with experienced tax specialists who work to ensure your tax liabilities are minimized and deductions are maximized.

# [ INVESTMENTS ]

To create a successful investment plan you must establish objectives, create an appropriate strategy, implement solutions and constantly monitor progress. At True Capital, we have developed asset allocation models comprised of traditional and alternative investments that seek to minimize volatility and maximize returns.

### Equities
True Capital offers a variety of equity investment strategies ranging from a Global Multi-Cap Core model to a diversified exchange traded funds strategy. These are actively managed models which incorporate various sectors of the market including commodities and currencies. All of our models are designed to capture performance in various market conditions.

### Fixed Income
We strongly believe that income producing assets are an important part of your asset allocation. These products include corporate, government and tax free municipals with a focus on revenue bonds. Each portfolio is tailored to meet your specific needs and takes into consideration your residence, current and future income as well as regional and national earnings. In addition, we have created alternative investment vehicles that focus on short to mid-term yields with the potential for higher than market returns.

### Hedge Funds
True Capital has relationships with premiere hedge fund managers who specialize in leverage, long/short and derivative based portfolios. We maximize the return on investment by investing in these funds during appropriate market conditions. We strive to find managers with proven track records, timely reporting and most importantly transparency.

### Managed Real Estate
True Capital offers you the ability to invest in proprietary managed real estate opportunities that are rarely available to individual investors. The focus of these investments is on cash flow, higher internal rates of returns and future appreciation from property sales, which are generated through multi-family properties and student housing.



### Private Equity
True Capital has direct access to equity opportunities for early stage, mature and non-publicly traded companies through our unique and diverse network. Through extensive due diligence, we provide opportunity investment vehicles that have the ability to generate above average returns.




44

**Our clients** include more than 150 **Professional Athletes** who participate in the NFL, NBA, MLB, WNBA, international leagues and other elite sports. They have the ability to earn substantial income over a short period of time and therefore it is critical that they plan accordingly. With a focus on education and a commitment to financial transparency, our systematic approach prepares them for this exceptional lifestyle. Through our experience and extensive network in the industry, we help **Entertainers** navigate the peaks and valleys inherent in their business. They more than others experience an unpredictable work environment that necessitates a balance of income and frequent liquidity. Together, we define and monitor a financial plan throughout their producing years that accommodate their lifestyle for generations to come. We have created a specialized financial management platform for our **High Net Worth** clients. We offer direct access to proprietary and non-proprietary investments. These unique investments provide the opportunity to enhance overall portfolio returns for investors.

45



# [ TEAM - EXECUTIVE ]

### Doug Raetz

Doug is Chief Executive Officer of True Capital and a 15 year veteran of the financial services industry. He is experienced in creating specialized investment strategies and identifying opportunities that meet the changing demands of the industry. Under his leadership, True Capital has experienced phenomenal growth and expanded advisory services to all major sports with a presence around the globe. As the company has grown, Doug has been steadfast in his commitment to delivering the highest level of service to his clients. Prior to co-founding True Capital, Doug was a Vice President within the Private Wealth Division at Citigroup Global Markets and an Investment Associate with Prudential Securities. In addition to his role at True Capital, Doug mentors entrepreneurial companies on corporate strategy, financial management, capital fundraising and mergers and acquisitions.

Doug grew up in New York and holds a Bachelor of Science in Finance and Strategic Analysis from Boston College.

### Heather Goodman

Heather is Chief Operating Officer and President of True Capital and brings over 15 years of financial service experience to her role. Heather excels at analyzing business challenges and building infrastructures which has allowed True Capital to create a scalable platform. Her ability to identify revenue streams and negotiate strategic partnerships has awarded True Capital a national footprint and global reach. Prior to co-founding True Capital, she held positions as a Financial Advisor at Citigroup Global Markets Inc., a Senior Manager of Business Development at NBC Internet and as a CPA at Deloitte & Touche, LLP in San Francisco. Heather is committed to the success of True Capital partners and to that end actively serves in an advisory capacity to several entities. In addition, she dedicates her time to the community through her work with non-profit organizations.

Heather was born and raised in the Bay Area and earned her a Bachelor of Science Degree in Business Administration with an emphasis in Accounting from California Polytechnic State University, San Luis Obispo.



# [ TEAM - ADVISORS ]

### Joe McLean

Joe is a Senior Vice President of True Capital Management. As an advisor, Joe manages his clients' business, financial and investment portfolios. Prior to joining True Capital, he was a Financial Advisor at Sanford C. Bernstein and served as a national spokesperson. During his tenure Joe spoke to over 20,000 financial advisors and their clients on topics including behavioral finance, advanced financial planning and wealth forecasting. He began his career at Franklin Templeton Investments in 1999 and went on to work as a Vice President at Lord Abbett Investments. Throughout Joe's career he has become one of the most trusted advisors in sports and entertainment, having consulted over 200 athletes and coaches in the NFL, NBA, MLB, PGA Tour and Nascar.

Before joining the investment industry, Joe played professional basketball for four years throughout Europe. He served as captain of the 1996 University of Arizona basketball team and played in the 1994 Final Four. Joe is a member of the Board of Directors for the University of Arizona Foundation. He also served as the spokesperson for the United Way and Arizona Cancer Center. Joe earned both his Bachelor of Arts and MBA from the University of Arizona.

### Jake Bond

Jake is a Vice President of True Capital. Prior to joining TCM, Jake held positions at Citigroup Global Markets and Mass-Mutual Financial. Jake has substantial experience in providing tax and financial planning strategies, business consulting and investment advisory services for professional athletes, entertainers and high net worth individuals. In addition, Jake serves as lead advisor to True Capital Insurance Services, evaluating risk management policy for all of True Capital's clientele. Jake actively participates on the boards of several professional and philanthropic organizations. He is a founding member of Our Three Mom's (OTM) non-profit organization that serves to support the academic aspirations of college prep students who come from single parent households with limited financial means. Jake currently serves as Treasurer and Chief Investment Officer of OTM's endowment fund. He is also a Board Member of the Dante Benedetti Foundation, which aims to help underprivileged youth through the game of baseball.

Jake is a Certified Financial Planner™ and is a member of the Financial Planning Association. He graduated Magna Cum Laude from the University of San Francisco, where he played baseball and received a Bachelor of Arts degree in International and Developmental Economics, as well as his graduate certificate in Economics.

# [ TEAM - OPERATIONS ]

### Karin Blair

Karin is the Director of Investments for True Capital. Karin has over 25 years of financial industry experience and has established a well rounded network within the investment community. Subsequent to joining True Capital, Karin was a partner and the Chief Operating Officer of Stafford Capital Management, a San Francisco based investment advisor focused on high net worth individuals managing close to $400 million in assets during her tenure. While at Stafford, Karin was a member of the firm's Investment Committee participating in portfolio management decisions for individual clients and the firm's long/short hedge fund, Pacific Asset Partners. In addition to her COO role, Karin was a general partner and the Head of Trading for Pacific Asset Partners overseeing the "short" and derivative assets of the hedge fund. Karin strongly believes that a disciplined approach combined with a collaborative research effort by the investment team is the key to portfolio management.

Karin has a passion for non-profit organizations focused on children and education, having recently served as a Grant Reader for the San Francisco Education Fund. Born and raised in the San Francisco Bay Area, Karin attended California State University, Chico with a focus on Business Administration.

### Rich Nichols

Rich serves as General Counsel for True Capital with over 25 years of experience as a lawyer and entrepreneur. Rich's expertise lies within identifying, operating, financing and consummating transactions as well as providing advice and business counsel to entrepreneurs in the technology, sports and entertainment, media, finance, broadcasting, and telecommunications industries. Rich has been an operating principal in several major start-ups and sports management companies and was the owner/operator of the City of San Francisco Marathon. He also served as a founding executive, Vice President of Corporate Affairs and General Counsel of the American Basketball League (ABL), and has been the personal sports attorney for several professional athletes. Rich also served as a Senior Counsel with Wilson Sonsini Goodrich & Rosati, P.C in the Silicon Valley and Hughes & Luce, L.L.P., in Dallas, Texas. At both firms, Rich's practice focused on venture capital and technology transactions.

Rich graduated from Dartmouth College and earned a Masters of Arts degree from Stanford University and a Juris Doctorate from the University of California, Hastings College of Law. Rich is a member of the State Bars of California and Texas and was an Adjunct Professor of Sports Law at University of California, Hastings College of Law.

### Kristina Hartman

With more than 10 years of marketing and events experience, Kristina brings a unique blend of ideas, expertise and creativity to any project. Most recently, she worked for Carol H. Williams Advertising as an Events Manager responsible for developing and managing events for Gilead Sciences across five US markets (New York, Chicago, Washington, DC, Atlanta and San Francisco). Prior to her tenure in advertising, she consulted with Visa Inc. and implemented both regional and national direct marketing campaigns for consumer debit card portfolios. She began her career with the San Francisco 49ers where she managed all marketing communications, creative, research and consumer loyalty programs for over eight years.

Kristina grew up in Turlock, California and earned her Bachelor of Science degree in Business Administration with an emphasis in Marketing from Pacific Union College, Napa.

# [ TEAM - CLIENT MANAGEMENT ]

### Brittanie Budinger

Brittanie is a Client Relations Senior Manager for True Capital. She has been with True Capital since its inception and developed the organization's client management division. She oversees all correspondence with True Capital clients and works seamlessly with each one to ensure the execution of their financial objectives. Her dedicated and personal approach to managing client affairs has resulted in long lasting relationships. After college Brittanie spent several years in Europe competing as a professional athlete and utilizes her bilingual language skills to build relationships with future True Capital clients. Combining her experience in marketing and financial services with her background as a competitive professional volleyball player Brittanie brings a strong sense of purpose, responsibility and dedication to our team of professionals. Her ability to connect with clients on a personal and professional level is invaluable.

Brittanie grew up in San Diego, California and graduated from the University of San Francisco with a Bachelor of Arts degree in Business Administration with an emphasis in Marketing.

### Jason Dufloth

Jason is a Client Relations Manager for True Capital. He began his career with True Capital while attending the University of San Francisco where he played college baseball. Jason seamlessly transitioned the many attributes that made him a successful athlete to our team of professionals. He exhibits a dedication to excellence and a true commitment to building and fostering client relationships. He takes an active role in building marketing analytics and strategic financial models that educate, encourage dialogue and maintain True Capital's commitment to transparency.

Jason grew up in Norwalk, California and graduated from the University of San Francisco with a Bachelors of Arts degree in Sociology.



# [ CONTACT US ]

San Francisco Headquarters
101 Montgomery Street
Suite 2150
San Francisco, CA 94104

Tel: 415.538.3600
Fax: 415.538.3601
Toll Free: 888.292.8299

New York
41 Madison Avenue
Suite 2505
New York, NY 10010
Tel: 646.202.2502
Fax: 212.202.6434

www.truecapitalmgmt.com

51



www.truecapitalmgmt.com

OMB No. 1615-0009; Expires 10/31/2013

# H-1B Data Collection and
# Filing Fee Exemption Supplement

**Department of Homeland Security**
U.S. Citizenship and Immigration Services

| 1. Name of the petitioner | 2. Name of the beneficiary | |
|---|---|---|
| True Capital Management, LLC | Jaric | Tamara |

## Part A.   General Information

**1. Employer Information** - *(check all items that apply).*

a. Is the petitioner an H-1B dependent employer? ☒ No ☐ Yes

b. Has the petitioner ever been found to be a willful violator? ☒ No ☐ Yes

c. Is the beneficiary an H-1B nonimmigrant exempt from the Dept. of Labor attestation requirements? ☒ No ☐ Yes

  1. If yes, is it because the beneficiary's annual rate of pay is equal to at least $60,000? ☐ No ☐ Yes

  2. Or is it because the beneficiary has a master's or higher degree in a specialty related to the employment? ☐ No ☐ Yes

d. Has the petitioner received TARP funding (provide explanation on **Page 7, Part 9** if the petitioner has subsequently repaid all TARP funding)? ☒ No ☐ Yes

e. Does the petitioner employ 50 or more individuals in the U.S.? ☒ No ☐ Yes

  If yes, are more than 50% of those employees in H-1B or L nonimmigrant status? ☐ No ☐ Yes

**2. Beneficiary's Highest Level of Education**  (Check one box below)

☐ a. NO DIPLOMA

☐ b. HIGH SCHOOL GRADUATE DIPLOMA or the equivalent (example: GED)

☐ c. Some college credit, but less than 1 year

☐ d. One or more years of college, no degree

☐ e. Associate's degree *(for example: AA, AS)*

☒ f. Bachelor's degree *(for example: BA, AB, BS)*

☐ g. Master's degree *(for example: MA, MS, MEng, MEd, MSW, MBA)*

☐ h. Professional degree *(for example: MD, DDS, DVM, LLB, JD)*

☐ i. Doctorate degree *(for example: PhD, EdD)*

**3. Major/Primary Field of Study**

Business Administration

| 4. Rate of Pay Per Year | 5. DOT Code | 6. NAICS Code |
|---|---|---|
| $25.00 per hour | 1 6 4 | 5 2 3 9 3 0 |

## Part B.   Fee Exemption Determination

In order for USCIS to determine if you must pay the additional **$1,500 or $750** American Competitiveness and Workforce Improvement Act (ACWIA) fee, answer all of the following questions:

☒ No ☐ Yes   **1.** Are you an institution of higher education as defined in section 101(a) of the Higher Education Act of 1965, 20 U.S.C. 1001(a)?

☒ No ☐ Yes   **2.** Are you a nonprofit organization or entity related to or affiliated with an institution of higher education, as defined in section 101(a) of the Higher Education Act of 1965, 20 U.S.C. 1001(a)?

☒ No ☐ Yes   **3.** Are you a nonprofit research organization or a governmental research organization, as defined in 8 CFR 214.2(h)(19)(iii)(C)?

☒ No ☐ Yes   **4.** Is this the second or subsequent request for an extension of stay that this petitioner has filed for this alien?

☒ No ☐ Yes   **5.** Is this an amended petition that does not contain any request for extensions of stay?

## Part B.   Fee Exemption and/or Determination *(Continued)*

☒ No    ☐ Yes    **6.** Are you filing this petition to correct a USCIS error?

☒ No    ☐ Yes    **7.** Is the petitioner a primary or secondary education institution?

☒ No    ☐ Yes    **8.** Is the petitioner a nonprofit entity that engages in an established curriculum-related clinical training of students registered at such an institution?

If you answered "Yes" to any of the questions above, you are only required to submit the fee for your H-1B Form I-129 petition. If you answered "No" to all questions, answer **Question 9**.

☐ No    ☒ Yes    **9.** Do you currently employ a total of 25 or fewer full-time equivalent employees in the United States, including all affiliates or subsidiaries of this company/organization?

If you answered "Yes," to **Question 9** above, you are required to pay an additional ACWIA fee of **$750**. If you answered "No," then you are required to pay an additional ACWIA fee of **$1,500**.

**NOTE:** On or after **March 8, 2005**, a U.S. employer seeking initial approval of H-1B nonimmigrant status for a beneficiary, or seeking approval to employ an H-1B nonimmigrant currently working for another U.S. employer, must submit an additional **$500** fee. This additional **$500** Fraud Prevention and Detection fee was mandated by the provisions of the H-1B Visa Reform Act of 2004. **There is no exemption from this fee.** You must include payment of this **$500** fee with your submission of this form. Failure to submit the fee when required will result in rejection or denial of your submission. *This $500 fee must be paid by separate check or money order.*

For petitions postmarked on or after August 14, 2010, through September 30, 2014, an additional fee of $2,000 must be submitted if you responded "yes" to both questions in 1e of Part A of this supplement. This $2,000 fee was mandated by the provisions of Public Law 111-230 and should be submitted by separate check or money order.

The Fraud Prevention and Detection Fee and the Public Law 111-230 fee do not apply to H-1B1 petitions. **These fees, when applicable, may not be waived.** You must include payment of the fee(s) with your submission of this form. Failure to submit the fee(s) when required will result in rejection or denial of your submission. *Each of these fee(s) should be paid by separate check(s) or money order(s).*

## Part C.   Numerical Limitation Information

1. Specify how this petition should be counted against the H-1B numerical limitation (a.k.a. the H-1B "Cap"). *(Check one)*:

   ☒ **a.** CAP H-1B Bachelor's Degree                    ☐ **c.** CAP H-1B1 Chile/Singapore

   ☐ **b.** CAP H-1B U.S. Master's Degree or Higher        ☐ **d.** CAP Exempt

2. If you answered question **1b** "CAP H-1B U.S. Master's Degree or Higher," provide the following information regarding the master's or higher degree the beneficiary has earned from a U.S. institution as defined in 20 U.S.C. 1001(a):

   **a.** Name of the U.S. institution of higher education

   **b.** Date Degree Awarded                          **c.** Type of U.S. Degree

   **d.** Address of the U.S. institution of higher education

3. If you answered question **1d** "CAP Exempt," you must specify the reason(s) this petition is exempt from the numerical limitation for H-1B classification:

   ☐ **a.** The petitioner is an institution of higher education as defined in section 101(a) of the Higher Education Act, of 1965, 20 U.S.C. 1001(a).



54

**Part C.   Numerical Limitation Exemption Information** *(Continued)*

☐ **b.** The petitioner is a nonprofit entity related to or affiliated with an institution of higher education as defined in section 101(a) of the Higher Education Act of 1965, 20 U.S.C. 1001(a).

☐ **c.** The petitioner is a nonprofit research organization or a governmental research organization as defined in 8 CFR 214.2(h)(19)(iii)(C).

☐ **d.** The petitioner will employ the beneficiary to perform job duties at a qualifying institution (see **a – c** above) that directly and predominately furthers the normal, primary, or essential purpose, mission, objectives, or function of the qualifying institution, namely higher education or nonprofit or government research.

☐ **e.** The petitioner is requesting an amendment to or extension of stay for the beneficiary's current H-1B classification.

☐ **f.** The beneficiary of this petition is a J-1 nonimmigrant physician who has received a waiver based on section 214(1)(1)(B) or (C) of the Act (commonly called a Conrad Medical Waiver).

☐ **g.** The beneficiary of this petition: (1) was previously granted status as an H-1B nonimmigrant in the past 6 years, (2) is applying from abroad to reclaim the remaining portion of the six years, or (3) is seeking a 7th year extension based upon AC21 and the beneficiary's previous H-1B petitioner/employer **was not** a CAP exempt organization as defined above in **a.**, **b.**, and **c.**

☐ **h.** The petitioner is an employer subject to the Guam-CNMI cap exemption pursuant to Public Law 110-229.

☐ **i.** The petitioner is requesting a change of employer and the beneficiary previously worked as an H-1B for an employer subject to Guam-CNMI cap exemption pursuant to Public Law 110-229.

**Part D.  Off-Site Assignment of H-1B Beneficiaries**

☒ No   ☐ Yes   **a.** The beneficiary of this petition will be assigned to work at an off-site location for all or part of the period for which H-1B classification sought.

☐ No   ☐ Yes   **b.** Placement of the beneficiary off-site during the period of employment will comply with the statutory and regulatory requirements of the H-1B nonimmigrant classification.

☐ No   ☐ Yes   **c.** The beneficiary will be paid the higher of the prevailing or actual wage at any and all off-site locations.

OMB Approval: 1206-0310
Expiration Date: 01/31/2012

**Labor Condition Application for Nonimmigrant Workers**
**ETA Form 9035 & 9035E**
**U.S. Department of Labor**



## Electronic Filing of Labor Condition Applications
## For The H-1B Nonimmigrant Visa Program

This Department of Labor, Employment and Training Administration (ETA), electronic filing system enables an employer to file a Labor Condition Application (LCA) and obtain certification of the LCA. This Form must be submitted by the employer or by someone authorized to act on behalf of the employer.

A) I understand and agree that, upon my receipt of ETA's certification of the LCA by electronic response to my submission, I must take the following actions at the specified times and circumstances:
* print and sign a hardcopy of the electronically filed and certified LCA;
* maintain a signed hardcopy of this LCA in my public access files;
* submit a signed hardcopy of the LCA to the United States Citizenship and Immigration Services (USCIS) in support of the I-129, on the date of submission of the I-129;
* provide a signed hardcopy of this LCA to each H-1B nonimmigrant who is employed pursuant to the LCA.

☑ Yes ☐ No

B) I understand and agree that, by filing the LCA electronically, I attest that all of the statements in the LCA are true and accurate and that I am undertaking all the obligations that are set out in the LCA (Form ETA 9035E) and the accompanying instructions (Form ETA 9035CP).

☑ Yes ☐ No

C) I hereby choose one of the following options, with regard to the accompanying instructions:

☐ I choose to have the Form ETA 9035CP electronically attached to the certified LCA, and to be bound by the LCA obligations as explained in this form

☑ I choose not to have the Form ETA 9035CP electronically attached to the certified LCA, but I have read the instructions and I understand that I am bound by the LCA obligations as explained in this form

| ETA Form 9035/9035E Attestation | FOR DEPARTMENT OF LABOR USE ONLY | | | | | Page 1 of 1 |
|---|---|---|---|---|---|---|
| Case Number: I-200-12082-915651 | Case Status: CERTIFIED | Period of Employment: | 09/01/2012 | to | 08/31/2015 | |

*56*

OMB Approval: 1205-0310
Expiration Date: 01/31/2012

### Labor Condition Application for Nonimmigrant Workers
### ETA Form 9035 & 9035E
### U.S. Department of Labor



*Please read and review the filing instructions carefully before completing the ETA Form 9035 or 9035E. A copy of the instructions can be found at http://www.foreignlaborcert.doleta.gov/. In accordance with Federal Regulations at 20 CFR 655.730(b), incomplete or obviously inaccurate Labor Condition Applications (LCAs) will not be certified by the Department of Labor. If the employer has received permission from the Administrator of the Office of Foreign Labor Certification to submit this form non-electronically, ALL required fields/items containing an asterisk ( * ) must be completed as well as any fields/items where a response is conditional as indicated by the section ( § ) symbol.*

## A. Employment-Based Nonimmigrant Visa Information

| 1. Indicate the type of visa classification supported by this application (Write classification symbol): * | H-1B |
|---|---|

## B. Temporary Need Information

| 1. Job Title *   BUSINESS MARKETING SPECIALIST | |
|---|---|
| 2. SOC (ONET/OES) code *  13-1161 | 3. SOC (ONET/OES) occupation title *  MARKET RESEARCH ANALYSTS AND MARKETING |

| 4. Is this a full-time position? * | Period of Intended Employment | |
|---|---|---|
| ☐ Yes  ☑ No | 5. Begin Date * 09/01/2012 (mm/dd/yyyy) | 6. End Date * 08/31/2015 (mm/dd/yyyy) |

7. Worker positions needed/basis for the visa classification supported by this application

| 1 | Total Worker Positions Being Requested for Certification * |
|---|---|

Basis for the visa classification supported by this application
*(indicate the total workers in each applicable category based on the total workers identified above)*

| 1 | a. New employment * | 0 | d. New concurrent employment * |
|---|---|---|---|
| 0 | b. Continuation of previously approved employment * without change with the same employer | 0 | e. Change in employer * |
| 0 | c. Change in previously approved employment * | 0 | f. Amended petition * |

## C. Employer Information

| 1. Legal business name *   TRUE CAPITAL MANAGEMENT, LLC. | | |
|---|---|---|
| 2. Trade name/Doing Business As (DBA), if applicable   N/A | | |
| 3. Address 1 *   101 MONTGOMERY STREET, SUITE 2150 | | |
| 4. Address 2   N/A | | |
| 5. City *  SAN FRANCISCO | 6. State * CA | 7. Postal code * 94104 |
| 8. Country *  UNITED STATES OF AMERICA | 9. Province  N/A | |
| 10. Telephone number *  4155383601 | 11. Extension  N/A | |
| 12. Federal Employer Identification Number (FEIN from IRS) *  208138813 | 13. NAICS code (must be at least 4-digits) *  523930 | |

57

OMB Approval: 1205-0310
Expiration Date: 01/31/2012

### Labor Condition Application for Nonimmigrant Workers
### ETA Form 9035 & 9035E
### U.S. Department of Labor



### D. Employer Point of Contact Information

**Important Note:** The information contained in this Section must be that of an employee of the employer who is authorized to act on behalf of the employer in labor certification matters. The information in this Section must be different from the agent or attorney information listed in Section E, unless the attorney is an employee of the employer.

| 1. Contact's last (family) name *<br>GOODMAN | 2. First (given) name *<br>HEATHER | 3. Middle name(s) *<br>N/A |
|---|---|---|
| 4. Contact's job title * MANAGING DIRECTOR | | |
| 5. Address 1 * 101 MONTGOMERY STREET, SUITE 2150 | | |
| 6. Address 2 N/A | | |

| 7. City * SAN FRANCISCO | | 8. State * CA | 9. Postal code * 94104 |
|---|---|---|---|
| 10. Country *<br>UNITED STATES OF AMERICA | | 11. Province<br>N/A | |
| 12. Telephone number *<br>4155383600 | 13. Extension<br>N/A | 14. E-Mail address<br>HEATHER@TRUECAPITALMGMT.COM | |

### E. Attorney or Agent Information (If applicable)

| 1. Is the employer represented by an attorney or agent in the filing of this application? *<br>If "Yes", complete the remainder of Section E below. | | | ☐ Yes | ☑ No |
|---|---|---|---|---|

| 2. Attorney or Agent's last (family) name §<br>N/A | 3. First (given) name §<br>N/A | 4. Middle name(s) §<br>N/A |
|---|---|---|
| 5. Address 1 § N/A | | |
| 6. Address 2 N/A | | |

| 7. City §<br>N/A | | 8. State §<br>N/A | 9. Postal code §<br>N/A |
|---|---|---|---|
| 10. Country §<br>N/A | | 11. Province<br>N/A | |
| 12. Telephone number §<br>N/A | 13. Extension<br>N/A | 14. E-Mail address<br>N/A | |

| 15. Law firm/Business name §<br>N/A | 16. Law firm/Business FEIN §<br>N/A |
|---|---|
| 17. State Bar number (only if attorney) §<br>N/A | 18. State of highest court where attorney is in good standing (only if attorney) §<br>N/A |
| 19. Name of the highest court where attorney is in good standing (only if attorney) §<br>N/A | |

---

| ETA Form 9035/9035E | FOR DEPARTMENT OF LABOR USE ONLY | | | Page 2 of 5 |
|---|---|---|---|---|
| Case Number: I-200-12082-915561 | Case Status: CERTIFIED | Period of Employment: 09/01/2012 to 08/31/2015 | | |

58

OMB Approval: 1205-0310
Expiration Date: 01/31/2012

## Labor Condition Application for Nonimmigrant Workers
### ETA Form 9035 & 9035E
### U.S. Department of Labor



### F. Rate of Pay

| 1. Wage Rate (Required) | 2. Per: (Choose only one) * |
|---|---|
| From: $ ___25.00___ .* <br> To: $ ___N/A___ | ☑ Hour   ☐ Week   ☐ Bi-Weekly   ☐ Month   ☐ Year |

### G. Employment and Prevailing Wage Information

**Important Note:** It is important for the employer to define the place of intended employment with as much geographic specificity as possible. The place of employment address listed below <u>must be a physical location and cannot be a P.O. Box</u>. The employer may use this section to identify up to three (3) physical locations and corresponding prevailing wages covering each location where work will be performed and the electronic system will accept up to 3 physical locations and prevailing wage information. If the employer has received approval from the Department of Labor to submit this form non-electronically and the work is expected to be performed in more than one location, an attachment must be submitted in order to complete this section.

#### a. Place of Employment 1

| 1. Address 1 *  101 MONTGOMERY STREET, SUITE 2150 | |
|---|---|
| 2. Address 2   N/A | |
| 3. City *  SAN FRANCISCO | 4. County *  SAN FRANCISCO COUNTY |
| 5. State/District/Territory *  CALIFORNIA | 6. Postal code *  94104 |

| Prevailing Wage Information (corresponding to the place of employment location listed above) | |
|---|---|
| 7. Agency which issued prevailing wage §  N/A | 7a. Prevailing wage tracking number (if applicable) §  N/A |
| 8. Wage level *     ☑ I     ☐ II     ☐ III     ☐ IV     ☐ N/A | |
| 9. Prevailing wage *  $ ___24.49___ | 10. Per: (Choose only one) *  ☑ Hour  ☐ Week  ☐ Bi-Weekly  ☐ Month  ☐ Year |
| 11. Prevailing wage source (Choose only one) *     ☐ OES     ☐ CBA     ☐ DBA     ☐ SCA     ☑ Other | |
| 11a. Year source published *  2011 | 11b. If "OES", <u>and</u> SWA/NPC did not issue prevailing wage OR "Other" in question 11, specify source §  OES WAGE LIBRARY |

### H. Employer Labor Condition Statements

**Important Note:** In order for your application to be processed, you <u>MUST</u> read Section H of the Labor Condition Application – General Instructions Form ETA 9035CP under the heading "Employer Labor Condition Statements" and agree to all four (4) labor condition statements summarized below:

(1) **Wages:** Pay nonimmigrants at least the local prevailing wage or the employer's actual wage, whichever is higher, and pay for nonproductive time. Offer nonimmigrants benefits on the same basis as offered to U.S. workers.

(2) **Working Conditions:** Provide working conditions for nonimmigrants which will not adversely affect the working conditions of workers similarly employed.

(3) **Strike, Lockout, or Work Stoppage:** There is no strike, lockout, or work stoppage in the named occupation at the place of employment.

(4) **Notice:** Notice to union or to workers has been or will be provided in the named occupation at the place of employment. A copy of this form will be provided to each nonimmigrant worker employed pursuant to the application.

| 1. <u>I have read and agree to</u> Labor Condition Statements 1, 2, 3, and 4 above and as fully explained in Section H of the Labor Condition Application – General Instructions – Form ETA 9035CP. * | ☑ Yes   ☐ No |
|---|---|

ETA Form 9035/9035E  |  **FOR DEPARTMENT OF LABOR USE ONLY**  |  Page 3 of 5

Case Number: ___1-200-12082-915551___   Case Status: ___CERTIFIED___   Period of Employment: ___09/01/2012___ to ___08/31/2015___

59

OMB Approval: 1205-0310
Expiration Date 01/31/2012

## Labor Condition Application for Nonimmigrant Workers
### ETA Form 9035 & 9035E
### U.S. Department of Labor



### I. Additional Employer Labor Condition Statements – H-1B Employers ONLY

*Important Note:* In order for your H-1B application to be processed, you <u>MUST</u> read Section I – Subsection 1 of the Labor Condition Application – General Instructions Form ETA 9035CP under the heading "Additional Employer Labor Condition Statements" and answer the questions below.

#### a. Subsection 1

| 1. Is the employer H-1B dependent? § | ☐ Yes ☑ No |
|---|---|
| 2. Is the employer a willful violator? § | ☐ Yes ☑ No |
| 3. If "Yes" is marked in questions I.1 and/or I.2, you must answer "Yes" or "No" regarding whether the employer will use this application ONLY to support H-1B petitions or extensions of status for exempt H-1B nonimmigrants? § | ☐ Yes   ☐ No   ☐ N/A |

If you marked "Yes" to questions I.1 and/or I.2 and "No" to question I.3, you <u>MUST</u> read Section I – Subsection 2 of the Labor Condition Application – General Instructions Form ETA 9035CP under the heading "Additional Employer Labor Condition Statements" and indicate your agreement to all three (3) additional statements summarized below.

#### b. Subsection 2

   A.  **Displacement:** Non-displacement of the U.S. workers in the employer's workforce
   B.  **Secondary Displacement:** Non-displacement of U.S. workers in another employer's workforce; and
   C.  **Recruitment and Hiring:** Recruitment of U.S. workers and hiring of U.S. workers applicant(s) who are equally or better qualified than the H-1B nonimmigrant(s).

| 4. I have read and agree to Additional Employer Labor Condition Statements A, B, and C above and as fully explained in Section I – Subsections 1 and 2 of the Labor Condition Application – General Instructions Form ETA 9035CP. § | ☑ Yes   ☐ No |
|---|---|

### J. Public Disclosure Information

*Important Note:* You <u>must</u> select from the options listed in this Section.

| 1.  Public disclosure information will be kept at: * | ☑ Employer's principal place of business<br>☐ Place of employment |
|---|---|

### K. Declaration of Employer

*By signing this form, I, on behalf of the employer, attest that the information and labor condition statements provided are true and accurate; that I have read sections H and I of the Labor Condition Application – General Instructions Form ETA 9035CP, and that I agree to comply with the Labor Condition Statements as set forth in the Labor Condition Application – General Instructions Form ETA 9035CP and with the Department of Labor regulations (20 CFR part 655, Subparts H and I). I agree to make this application, supporting documentation, and other records available to officials of the Department of Labor upon request during any investigation under the Immigration and Nationality Act. Making fraudulent representations on this Form can lead to civil or criminal action under 18 U.S.C. 1001, 18 U.S.C. 1546, or other provisions of law.*

| 1. Last (family) name of hiring or designated official *  GOODMAN | 2. First (given) name of hiring or designated official *  HEATHER | 3. Middle initial *  N/A |
|---|---|---|
| 4. Hiring or designated official title *  MANAGING DIRECTOR | | |
| 5. Signature * | 6. Date signed *  3/29/12 | |

---

60

OMB Approval: 1205-0310
Expiration Date: 01/31/2012

Labor Condition Application for Nonimmigrant Workers
ETA Form 9035 & 9035E
**U.S. Department of Labor**

**L. LCA Preparer**

**Important Note**: Complete this section if the preparer of this LCA is a person other than the one identified in either Section D (employer point of contact) or E (attorney or agent) of this application.

| 1. Last (family) name § | 2. First (given) name § | 3. Middle initial § |
|---|---|---|
| N/A | N/A | N/A |
| 4. Firm/Business name § N/A | | |
| 5. E-Mail address § N/A | | |

**M. U.S. Government Agency Use (ONLY)**

By virtue of the signature below, the Department of Labor hereby acknowledges the following:

This certification is valid from 09/01/2012 to 08/31/2015.

William L. Carlson
Department of Labor, Office of Foreign Labor Certification

03/28/2012
Determination Date (date signed)

I-200-12082-915551
Case number

CERTIFIED
Case Status

*The Department of Labor is not the guarantor of the accuracy, truthfulness, or adequacy of a certified LCA.*

**N. Signature Notification and Complaints**

The signatures and dates signed on this form will not be filled out when electronically submitting to the Department of Labor for processing, but **MUST** be complete when submitting non-electronically. If the application is submitted electronically, any resulting certification **MUST** be signed *immediately upon receipt* from the Department of Labor before it can be submitted to USCIS for further processing.

Complaints alleging misrepresentation of material facts in the LCA and/or failure to comply with the terms of the LCA may be filed using the WH-4 Form with any office of the Wage and Hour Division, Employment Standards Administration, U.S. Department of Labor. A listing of the Wage and Hour Division offices can be obtained at http://www.dol.gov/esa. Complaints alleging failure to offer employment to an equally or better qualified U.S. worker, or an employer's misrepresentation regarding such offer(s) of employment, may be filed with the U.S. Department of Justice, Office of the Special Counsel for Immigration-Related Unfair Employment Practices, 950 Pennsylvania Avenue, NW, Washington, DC, 20530. Please note that complaints should be filed with the Office of Special Counsel at the Department of Justice only if the violation is by an employer who is H-1B dependent or a willful violator as defined in 20 CFR 655.710(b) and 655.734(a)(1)(ii).

**O. OMB Paperwork Reduction Act** *(1205-0310)*

These reporting instructions have been approved under the Paperwork Reduction Act of 1995. Persons are not required to respond to this collection of information unless it displays a currently valid OMB control number. Obligations to reply are mandatory (Immigration and Nationality Act, Section 212(n) and (t) and 214(c). Public reporting burden for this collection of information, which is to assist with program management and to meet Congressional and statutory requirements is estimated to average 1 hour per response, including the time to review instructions, search existing data sources, gather and maintain the data needed, and complete and review the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the U.S. Department of Labor, Room C-4312, 200 Constitution Ave. NW, Washington, DC 20210. (Paperwork Reduction Project OMB 1205-0310.) **Do NOT send the completed application to this address.**